SUE ROWAN, alias, SUTTON, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

369 S. W. 2d 543.

(*Knoxville,* September Term, 1962.)

Opinion filed July 15, 1963.

HUBERT D. PATTY, Maryville, for plaintiff in error.

GEORGE F. MCCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

The plaintiff in error, defendant, was indicted upon a charge that on the 21st day of April, 1962, she did unlawfully, wilfully, feloniously, deliberately, premeditatedly, maliciously, and of her malice aforethought, assault Randall Humphrey with gun with intent at the time to kill and murder the said Randall Humphrey.

Upon the trial of the case the jury found her guilty of an assault with intent to commit voluntary manslaughter and sentenced her to serve not more than one year and one day in the State Penitentiary.

The State has agreed that the sentence should be modified so as to sentence her to the minimum fixed by law of not less than one year in the State Penitentiary.

The defendant made a motion for a new trial in due course and upon consideration thereof the same was overruled and from that action the plaintiff in error has perfected an appeal, and assigns several errors.

Assignment of Error number one is to the effect that the defendant should have been given a continuance because of her physical condition, and Assignment number two is to the effect that the District Attorney General conducted himself improperly in his argument of the case, both of which have been abandoned because the record in nowise supports such assignments.

Likewise, no argument is made in support of the insistence that the evidence preponderates against the verdict and in favor of the innocence of the accused. The jury having determined the facts and resolved all conflicts in the evidence in favor of the State, as indicated by their verdict, this assignment of error is not well taken. *Hargrove v. State,* 199 Tenn. 25, 281 S.W.2d 692; *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826.

Before disposing of the other assignments we think it necessary to make a brief statement of the facts as they appear to us from our examination of the record.

The prosecutor Humphrey and his friend, Kincaid, were returning from a trip to the mountains to their respective homes in Blount County when they stopped at an unnamed place on the highway, where dancing is one source of entertainment. At this place they met the defendant and a girl friend of hers, and from there they

went to another place known as ''441'' to get some sandwiches. They then went to the home of the girl friend. From there Humphrey took Kincaid and the defendant to a cabin out on the Walland Highway, which the witness recalled had the name ''Willow Groves'' where they were left to spend the night.

On the following morning Humphrey went back and picked them up and there was some misunderstanding about some money which the defendant claimed was taken from her pocketbook by Kincaid. At that time she took a pistol from her pocketbook, apparently intending to use it, but the same was taken away from her by Kincaid and the bullets extracted therefrom. The defendant then accused Humphrey of taking her money, which he denied.

Thereafter, the three of them got in Humphrey's car and came back into the City of Maryville and stopped near a taxicab station. They then became separated and the two men went to a restaurant to eat breakfast. They had been there for a short time only when the defendant came in and sat down beside Kincaid, and apparently had breakfast also.

After the three of them had finished they started to leave the place by way of the back door, Humphrey leading the way, the defendant in the second place, and Kincaid bringing up the rear. Humphrey had stepped only a few feet out of the building when he heard a shot and then felt it hit him in the back. He said:

''She shot twice, but the first one hit me in the side. Then, as I turned; after I felt the bullet hit me, I turned, and the second one hit me in the center of the back. And it came around my rib cage, came out in under my arm, came to the point of the skin. When the second came

around like this (indicating), well, I was turning, I was looking back towards the defendant and Kincaid had grabbed her.

"When Kincaid had her by the arm, she had the pistol in her hand. He, Kincaid, took his other hand and reached up and took the pistol out of her hand. When he got the pistol, he turned and asked me how bad I was hurt. And at that time, she turned and ran up the steps and back through the Sandwich Shop. And Kincaid started after her. Then he turned and ran back where I was at, and said he would take me to the hospital."

Humphrey said that it was a .22 caliber pistol and that when he turned around to see who had shot him that she, the defendant, had it, the gun, in her hand and that Kincaid took it out of her hand.

Humphrey said that the defendant was not drinking at that time, but that she had been drinking the night before. We imagine that all four of them had been drinking. Humphrey remained in the hospital for about a week.

Humphrey was asked if he knew why she shot him and he replied:

"No Sir, the only thing was just the argument over the money. Said someone had took her money.

"Q. And you hadn't been with her during the night there at the cabin then?

"A. No Sir."

The prosecutor admitted that he had been convicted of larceny and when asked how many times, he said, "I don't know." He also had been convicted of public drunkenness on several occasions.

When pressed on cross-examination about whether or not he actually knew who shot him, he made this statement:

"Well, no I couldn't exactly say that she shot me because I didn't see her. But what I was saying is that when I turned, I seen the pistol in her hand."

This must have seemed to the jury, as it seems to us, a rather strong circumstance that the defendant shot the prosecutor.

Kincaid testified that he spent the night with the defendant in the cabin aforesaid, and that on the following morning they engaged in an argument about some money, and then about a pistol which she was supposed to have had in her pocketbook. She finally took the pistol from her pocketbook and said to Kincaid, "I want my money." The pistol was taken away from her by Kincaid once and given back to her, and when taken away the second time, the shells were extracted therefrom and given back to her.

He then relates their return trip to Maryville and the fact that they had breakfast at the Sandwich Shop, and corroborates the testimony of Humphrey about leaving the restaurant through the back door, Humphrey leading the way with the defendant second, and Kincaid last. He said that he heard shots from the gun and then saw that Sue had the gun in her hand. He took it away from her and then took Humphrey to the hospital.

About two days after the shooting, the defendant was arrested by Policemen Boring and Phillips. They found her on Brick Mill Road in a honeysuckle patch, and at that time she had a large butcher knife in her hand. Just

why she was in the honeysuckle. patch is not revealed by the record.

The Chief of Police of the City of Maryville testified that he talked to the defendant upon her arrest and she denied shooting Humphrey, but she admitted an argument had arisen with reference to some money and she accused Humphrey of taking it from her pocketbook.

She admitted buying shells for the gun, but said that she had given the gun to Kincaid a night or two before the shooting.

The defendant did not testify in her own behalf and did not offer any witnesses.

■ The defendant claims that the court erred in refusing to grant her motion for a directed verdict made at the close of all the proof.

The fact that the court overruled the motion for a new trial is sufficient answer to this assignment. If the trial judge had been of the opinion that the jury had reached the wrong conclusion he would have, in the proper exercise of his discretion, granted a new trial. We have said many times in prior cases that this Court has never and does not now approve the directing of verdicts of acquittal in criminal cases. See *Yelton v. State,* 211 Tenn. 464, 365 S.W.2d 877, 880, and other cases.

■ It is alleged that the State failed to prove that the offense was committed within the statute of limitations. The proof on this point in the record clearly shows that the offense was committed during April of this year and "this year" from the whole record means the year 1962. Therefore, it is clearly within the statutory limit of prosecution of the offense charged.

■ It is also assigned as error that the State prosecuted the defendant under T.C.A. sec. 39-604, when, in fact, the prosecution should have been under T.C.A. sec. 39-610.

T.C.A. sec. 39-604 provides, in part, that:

"Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, * * * shall, on conviction, be imprisoned in the penitentiary not less than three (3) years nor more than twenty-one (21) years."

An indictment for an assault with intent to commit murder in the first degree includes the lower grades of the offense, namely, assault or assault with intent to commit murder in the second degree, voluntary manslaughter, assault and battery, and simple assault. *Smith v. State,* 70 Tenn. 614; *Lawless v. State,* 72 Tenn. 173; *Morton v. State,* 91 Tenn. 437, 19 S.W. 225, and other cases.

The judge charged the jury that if it found the defendant guilty of assault with intent to commit voluntary manslaughter that it would then fix her punishment as detailed by the court.

Based upon the charge, the jury reported that it found "the defendant guilty of assault with intent to commit voluntary manslaughter."

Therefore, there is no merit in this assignment and it is overruled.

■ The plaintiff in error next complains that the court erred in failing to charge on the statutory and constitutional rights of the defendant not to give testimony in the cause. Put another way, the complaint is that the

court failed to instruct the jury that no presumption should arise against the defendant because of her failure to testify in her own behalf.

This matter has given us considerable concern. Article 1, Section 9, of our Constitution provides:

"That in all criminal prosecutions, the accused hath .the right to be heard by himself and his counsel; * * * and shall not be compelled to give evidence against himself."

T.C.A. sec. 40-2403 provides, in part:

"The failure of the party defendant (in a criminal case) * * * to testify in his own behalf shall not create any presumption against him. * * *"

In the case of *Smithson v. State,* 127 Tenn. 357, 155 S.W. 133, was reversed and remanded because counsel for the State, in his argument before the jury, said, in effect, that the accused had been afraid to testify when on trial previously for the same offense, that his own counsel had no faith in his defense, and was ashamed to put him on the witness stand.

In the case of *Humphrey, et al. v. State,* 187 Tenn. 377, 382, 215 S.W.2d 791, 794, the defendants assailed this portion of the charge of the court:

"The fact that the Defendants did not take the witness stand to testify in their own behalf cannot be considered by you for any purpose. They had a right to testify, or not to testify, as they desired."

It was not insisted in that case that the charge of the court was incorrect or erroneous, but it was insisted that

the charge was too meager. The Court, in disposing of the matter, said:

"While we do not concede that this portion of the charge was not sufficiently full, even if it was not, such meagerness could not avail the defendants as ground for reversal, since no special request was tendered to call attention of the Trial Judge to the defect."

In the case at bar, there was no special request submitted on behalf of the defendant that the court charge the jury that no presumption should arise by reason of the failure of the defendant to testify in her own behalf. In the general charge the trial judge very properly said:

"Gentlemen, you must enter upon this investigation with the presumption that the defendant is not guilty of any crime; therefore, it is incumbent upon the State before you can convict any defendant in a criminal case to establish to your satisfaction beyond a reasonable doubt, first, what the law calls the 'Corpus Delicti,' the body of the crime, that is, that the crime alleged has been in fact committed. Second, the venue, that is, that the crime was committed in this County and State in which it is being tried, * * *."

In 23A C.J.S. Criminal Law, under Section 1266, at page 649, it is said that:

"* * * some statutes have been construed to prohibit the giving of an instruction to the effect that the failure of accused to testify in his own behalf should not be considered against him in any way, other statutes have been construed to permit it, either on request or on the court's own motion. Under some statutes it is made

the duty of the court so to instruct the jury, while under others, * * * a failure to give such an instruction is not error, in the absence of a proper request therefor * * *."

In 23A C.J.S. Criminal Law, under Section 1325(1), at page 831, it is said:

"As a general rule, where the court has instructed generally as to the issues, if accused desires a particular instruction, or an instruction upon a particular phase of the case, he should submit it with a proper request that it be given, otherwise a failure to give it is not error, * * * and the failure to request instructions on any particular point, not basic or fundamental, is regarded as a waiver of the right to such instructions and acquiescence in the omission."

If the failure of the court to so instruct the jury is considered to be basic or fundamental, then error has been committed and this case should be reversed because as was said in the case of *Myers v. State,* 185 Tenn. 264, 268, 206 S.W.2d 30, 31:

"It has long been a well settled rule in this state that a defendant is entitled to an affirmative instruction upon every issue raised by the evidence."

Of course, if the failure to instruct is not harmful, it would not be reversible error.

Upon first blush the failure to give this specific charge appears to be of a fundamental character. However, reflecting further, it might be considered error to call the attention of the jury to the failure of the defendant to testify, thereby placing an undue emphasis upon such failure. As a matter of fact, the late, distinguished Jus-

tice Learned Hand said in the case of *Becher v. United States,* 2 Cir., 5 F.2d 45, 49:

"In his charge the learned trial judge without request from the defendants mentioned the fact that they had not taken the stand. With some elaboration he instructed the jury that no inference of guilt could be drawn from this. Becher now urges that any allusion to the fact was reversible error. It is no doubt better if a defendant requests no charge upon the subject, for the trial judge to say nothing about it; but to say that when he does, it is error, carries the doctrine of self-incrimination to an absurdity."

In *Yelton v. State,* supra, the trial judge charged the jury that:

"The defendants are not required to take the stand in their own behalf and their failure to do so cannot be considered for any purpose against them, nor can any inference be drawn from such failure of the defendants to take the stand in their own behalf."

We held the above charge, unrequested in that case, to be proper, although there was no assignment of error that it was improper.

In the case of *Johns v. State,* 14 Wis.2d 119, 109 N.W.2d 490, in a decision by the Supreme Court of Wisconsin in 1961, an almost exact situation occurred, as here, and in that case the Court said:

"By the great weight of authority, it is not error for the trial court not to give an instruction that no presumption arises from the failure of the accused to take the witness stand in his own behalf in the absence of a request therefor by the accused."

The states of Arizona, Colorado, Connecticut, Georgia, Iowa, Kansas, and several others have adopted this same view.

North Carolina has taken the contrary view and holds that a defendant is justified in assuming that the jury will be so instructed without any special request.

While the State of Washington at one time held that a request was not necessary under a statute requiring the court to instruct that no inference of guilty should arise against the accused for failure to testify, it has since abrogated this rule.

Our state and others have held that it is not error to so instruct the jury without request. However, in the case before us, no request was made and we conclude with the weight of authority that the trial court cannot be put in error for failure to so instruct in the absence of a request therefor.

It will be remembered that in the general instructions the court did say that the defendant was presumed to be innocent until proven guilty beyond a reasonable doubt. In the absence of a special request for more explicit instruction on the failure of the defendant to testify we think the general charge was sufficient to protect her constitutional and statutory right not to testify from any inference that might arise therefrom.

We have carefully considered all of the assignments of error and we find them to be without merit.

Therefore, the action of the trial court is in all things affirmed, except as modified herein.