**Emmit EVANS and Marion Smith, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Aug. 26, 1977.

Certiorari Denied by Supreme Court Nov. 7, 1977.

Jack W. Bowers, Rufus W. Beamer, Jr., Knoxville, for Evans.

Charles C. Burks, Jr., Knoxville, J. Anthony Brown, Knoxville, for Smith.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, John W. Gill, Jr., Memphis, and William L. Waters, Knoxville, Asst. Dist. Attys. Gen., for appellee.

O'BRIEN, Judge.

## OPINION

This is an appeal from a judgment in the Criminal Court of Knox County finding defendants guilty of murder in the first degree during perpetration of an armed robbery, and fixing their punishment at death by electrocution.

Evans has filed thirty-six assignments of error, Smith thirty-two. Most of the assignments for the separate defendants parallel in form and content. We first consider those filed individually by defendant, Evans, who complains that the trial court erred in denying a motion for severance.

A pre-trial motion for severance was overruled because no valid grounds were shown. The motion was renewed prior to trial, again found to be without merit and overruled.

We find no indication in this record of any prejudice to the defendant by failure to grant severance. Where two or more defendants are charged jointly, with a single crime, it is proper to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the defendant's rights. See *Woodruff v. State*, 164 Tenn. 530, 51 S.W.2d 843; *Cole v. State*, 4 Tenn.Cr.App. 645, 475 S.W.2d 196. The assignment is overruled.

Evans says the trial court erred:

(a) In holding that he knowingly and voluntarily waived his Fifth Amendment rights in making a statement to police while he was a suspect for armed robbery.

(b) Holding that he knowingly and voluntarily waived his Sixth Amendment rights prior to a pre-indictment line-up.

There was never any confession or admission of either defendant presented to the jury. The line-up complained of by defendant occurred prior to his indictment. He was not entitled to counsel at the line-up proceedings. See *Maxwell v. State*, 501 S.W.2d 577, Tenn.Cr.App.1973; *State v. Jefferson*, 529 S.W.2d 674, Tenn.1975; *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. The assignment is overruled.

Evans charges the trial court erred:

(a) By allowing, over objection, testimony of a witness to statements made by the co-defendant, Smith, tending to inculpate Evans in violation of his Sixth and Fourth Amendment rights.

(b) By not giving any precautionary or limiting instructions to the jury regarding Sixth Amendment rights or the hearsay rule.

(c) By holding that the testimony of the witness referring to the statements of Smith were admissible as substantive evidence against Evans.

Defendant's principal objection seems to be that there was a *Bruton* violation (*Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476) in the admission of certain statements made by co-defendant Smith, through the testimony of the witness, Valerio. All three of the parties, Evans, Smith, and Valerio, were present during some of the conversations related by Valerio. The statements of Smith admitted in evidence were not in the way of a confession inculpating Evans in the crime. To the contrary, Valerio's testimony was the report of a conversation between the other two and his observation of Evans' reactions to Smith's comments, insofar as Evans was involved. We find no *Bruton* violation here. Defense counsel argues very ably and with great force that defendant has not only been denied his Sixth Amendment right of confrontation but that the testimony was admitted in clear violation of the hearsay evidence rule. This case falls within several of the recognized exceptions to the hearsay rule. The facts of the case bring the testimony of Valerio within the scope of the exception authorizing admission of evidence of a conspiracy. The testimony was corroborative of other evidence that placed Evans at the scene of a violent, wanton, and grossly executed homicide committed in the course of a robbery. It showed his state of mind and intent immediately preceding, and, subsequent to, the actual occurrence of the crime. Everyone entering into a conspiracy is a party to every act which has before been done by the others, and to every act by the others afterwards, in furtherance of the common design, and all acts and declarations of conspirators, or of any of them, may be given in evidence against all, from the time the conspiracy had its origin until its design has been consummated, or until it is abandoned. See *Solomon v. State*, 168 Tenn. 180, 76 S.W.2d 331, and authorities cited there. Although the issue was not raised it is not improbable that the testimony was admissible under the res gestae exception to the rule. *Canady v. State*, 3 Tenn.Cr.App. 337, 461 S.W.2d 53. There is no doubt the testimony was admissible under the tacit admission exception to the rule. See *O'Brien v. State*, 221 Tenn. 346, 426 S.W.2d 507; *Hunter v. State*, 222 Tenn. 672, 440 S.W.2d 1. The assignment is overruled.

Holding as we do that the testimony was admissible under exceptions other than the tacit admission exception to the hearsay rule, taking the testimony of Valerio in conjunction with other convincing evidence in the record, it affirmatively appearing that the defendant heard and fully understood the remarks made by Smith which were made under circumstances affording him the opportunity to register denial, there having been no request for any precautionary jury instructions, we reject the suggestion that such an instruction was called for. The jury was entitled to consider the testimony, not as evidence of the circumstances detailed in the statements, but for such inference as the admitted evidence might reasonably warrant.

Defendants jointly say that the evidence presented at trial is insufficient to sustain the verdict and preponderates against the guilt and in favor of their innocence. It is their contention that the trial judge should have directed a verdict of acquittal as to the second count of the indictment because the State's proof failed to establish that the criminal agency of the defendants caused the death of the decedent.

■ The thrust of their argument is that the State failed to present sufficient evidence to provide a jury question on the cause of death of Mr. Boyd Wright. They say the testimony of Dr. Fredrick Fernando Brown, Jr., whose treatment of the victim began within fifteen or twenty minutes after he had been admitted to the emergency room at the hospital, and of Dr. Stephen Glen Wilson, Jr., who performed an autopsy on the victim's body, was insufficient to show the actual cause of death. We disagree. Dr. Brown testified that in his opinion the injuries on Wright's body were the ultimate cause of his death some twenty days after they were inflicted. Dr. Wilson testified that the trauma associated with Wright's injuries resulted in a decrease in oxygen supply to the brain, triggering what he classified as an acceleration in numbers of "small strokes". That some of these strokes involved a vital area of the victim's brain, which regulated body temperature, resulting in a rapid increase in temperature bringing about his death. The testimony of both doctors established the cause of death to be the injuries sustained by the victim. The distinguishing feature between this case and *Fine v. State*, 193 Tenn. 422, 246 S.W.2d 70, cited on behalf of defendant, is the uncontroverted evidence offered by the State to show that Boyd Wright had been wantonly, maliciously beaten and strangled prior to his hospitalization, and, some twenty-one days later, causing his demise. It is true that a homicide conviction should not be sustained where proof of death rests in the disjunctive, however, our cases hold that one who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. *Odeneal v. State*, 128 Tenn. 60, 157 S.W. 419; *McCord v. State*, 198 Tenn. 226, 278 S.W.2d 689.

A number of the assignments relating to the constitutionality of the death penalty, and collateral issues, have been preempted and rendered moot by the decision in *Collins v. State*, 550 S.W.2d 643 (Tenn.1977), in which our Supreme Court held that the statutes imposing the mandatory death penalty upon conviction of first degree murder are unconstitutional. In the opinion on the Petition to Rehear in *Collins*, (5/2/77), our Supreme Court concurred in the commutation of the death sentences of Collins and a fellow defendant, Frank Carl Morgan, to life imprisonment by executive action. The sentences of these defendants have also been commuted to life imprisonment by the Governor.

■ Defendants say they were denied the Sixth Amendment right to trial by jury by virtue of the statutes giving females the option to decline service when summoned to jury duty.

This case had come to trial and counsel was in the process of jury selection when the United States Supreme Court decision in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, was published, holding that women, as a class, may not be excluded from jury service or given automatic exemptions based solely on sex if the consequence is that criminal juries are almost always male. *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790, subsequently held that the *Taylor* decision was to have prospective application only. Notwithstanding *Taylor*, supra, defendants have failed to carry the burden imposed upon them to show that women were systematically excluded from either the Grand Jury or the Petit Jury in this case. The record indicates that there were five out of twelve female petit jurors, plus one alternate on the jury venire. The assignment is overruled.

■ Defendants are not entitled to a reversal because of duplicity in the indictment. The indictment contains three counts, the first charging murder in the first degree in common law form, the second count charging first degree murder in commission of a felony, and the third

count charging armed robbery. The face of the indictment clearly shows that these three offenses were committed at the same time on the same individual, and show a logical connection between the several counts. The indictment is not void for duplicity. *Hoyt v. State*, 107 Tenn. 539, 64 S.W. 473; *Halquist v. State*, 489 S.W.2d 88 (Tenn.Cr.App.1972).

We find no error in the rulings of the trial court on examination of the State's counsel in which witnesses testified about conversations with the victim prior to his demise. None of the content of the conversations were admitted into evidence. The defendants protest that a mis-trial should have been granted because a police officer testified that after he had talked to the victim he obtained a warrant. The witness had already testified that both Evans and Smith had been identified from photographs. Defendants cite no authority for this assignment of error. We do not get the implication that the officer sought warrants solely as a result of the conversation. We hold that if error was committed it was harmless in view of the previous identification of defendants.

■ Defendant's complaint that they were brought into the courtroom in the presence of the jury with shackles on both arms and legs, and that uniformed armed guards stood behind them throughout the trial must be overruled.

Prior to the jury selection counsel for Evans objected to the fact that two deputies were *sitting* behind defendants. The trial judge stated it was usual procedure to have guards in the courtroom, sometimes in uniform and sometimes not; the guards were required in this instance because of the nature of the offense, the high bond, and the fact that the court was being conducted in a hotel building without adequate security arrangements. A short time later counsel for Smith objected to the defendants being brought into the courtroom in chains in the presence of *prospective* jurors.

The trial judge stated he had given the guards discretionary authority for security due to the circumstances. He overruled the objection and instructed the officers to avoid bringing the defendants into the courtroom in irons unless they were unruly. The record seems to show that uniformed guards were sitting behind the defendants prior to the jury selection, and did not indicate they stood behind the defendants throughout the trial. There is no indication that any of the prospective jurors who eventually sat on the case saw the defendants in shackles.

■ Defendants charge error because the trial court failed to instruct prospective jurors not to consider any news items publicized about the trial, and failure to sequester the jurors pretrial. We find no abuse of the trial court's discretion in this regard and the assignment is overruled.

■ Defendants complaint is without merit regarding the admission, over objection, of the testimony of one of the physicians who treated the victim prior to his demise. The doctor testified he had treated the victim for an injury to the little finger of his left hand while he was in the intensive care unit at the hospital. He described the injury and the nature of his treatment. This testimony was relevant to corroborate that a valuable diamond ring was forcibly taken from the victim's hand. It was also relevant to show the element of malice. As a general rule, the acts and conduct of an accused and other circumstances and facts attending a homicide may be shown on a question of malice, premeditation, or deliberation. The fierceness and atrocity of the attack, the circumstances under which it was made, the nature and extent of the injury inflicted, the condition of the body and wearing apparel, the deadly nature of the weapon used, and the manner of using it, are proper subjects of inquiry. See 40 C.J.S. Homicide § 205, p. 1106.

■ Error is charged because defense counsel was denied the use of a medical

reference book in cross-examination of a physician testifying for the State. The assignment has not been briefed and defendants have not indicated the manner in which they were prejudiced by this alleged error. The trial judge has a wide latitude and large discretion in the control of cross-examination of witnesses, and his exercise of that discretion will not be interfered with except in a case of plain abuse. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460. We find no error and overrule the assignment.

Defendants make a general assignment, charging error on failure to sustain their objections to in-court identification by two of the State's witnesses on the theory that it was tainted by out-of-court identification procedures; further charging that the trial court erred in considering statements made by the defendant Smith against Evans at an out-of-jury hearing.

 The trial court conducted an extensive jury-out hearing on the procedures employed in the pre-trial identification. The witnesses, Hugh and Stephen Newman had arrived on the scene of the homicide while the defendants were still on the premises. In the course of the police investigation they were shown hundreds of photographs in an effort to identify the culprits. Through other sources police obtained information leading them to investigate Smith. It was only then that he was identified from a photograph which was included in a group of approximately twenty others. He was later identified by both witnesses after viewing a more recent photograph under similar conditions. The procedure for photographic identification of Evans was similar. All of the evidence in the record indicates that the pre-trial line-up procedure was conducted in a manner in keeping with all legal and constitutional requirements. After considering this evidence the trial judge found that the identification of the defendants was not tainted by any police action. A finding of fact of this nature is conclusive unless it can be

established the evidence preponderates against the lower court's judgment. The burden is on appellant to make this showing on appellate review. Defendants have failed to carry that burden. *Chapple v. State*, 528 S.W.2d 62, Tenn.Cr.App.1975. It would be inordinately unfair to either of the defendants for the trial judge not to consider any evidence available at a hearing to determine that their constitutional rights were preserved in the course of identification procedures, including testimony of either or both of the defendants. The assignments are overruled.

We do not find any misconduct on the part of the State's Attorney in the conduct of this trial. To the contrary, both counsel for the State as well as counsel for the defendants are to be commended for their scrupulous adherence to the law and their diligent efforts in assuring the defendants a fair and just trial. The assignment pertaining to misconduct of State's counsel is overruled.

Defendants charge the trial judge in an abuse of discretion in reversing himself on the issue of whether or not certain photographs should have been submitted to the jury.

 The State offered in evidence a series of colored slides of both the inside and outside of the Wright residence as it appeared during the course of the police investigation. Over defendants' objection, after a jury-out hearing, the trial judge allowed certain of the slides to be admitted while denying admission of others. During the lunch break State's counsel was allowed to procure authorities to sustain admission of photographs into evidence which had previously been denied. After further argument, in which neither side was denied the right to be heard, the admission of additional slides in the series was allowed. Sometime later in the trial proceedings a sharp issue developed relevant to the position and location of the unconscious victim when various of the witnesses arrived upon

**936**

the scene. A request was made to admit an additional photograph to corroborate the testimony of witnesses regarding the physical position of the victim. Admissibility of photographs is a matter within the trial court's sound discretion. *Palmer v. State*, 1 Tenn.Cr.App. 223, 435 S.W.2d 128. Photographs accurately showing a homicide environment as it existed at a time near enough to the homicide to warrant an inference that such condition did exist then should not be held inadmissible because of their possible inflammatory character. *Bass v. State*, 191 Tenn. 259, 231 S.W.2d 707. We find no inconsistency in the ruling of the trial judge on the admissibility of the photographs and overrule the assignment.

▮▮▮ There was an objection to closing argument of the State's counsel which was not sustained. This has been submitted as error. We find nothing in that portion of the argument included in the record to indicate that the State's counsel made argument outside of the evidence heard by the jury. It is not error to argue anything warranted from the facts and circumstances of the case. *Briggs v. State*, 3 Tenn.Cr.App. 471, 463 S.W.2d 161. We find no abuse of the trial judge's discretion in his control of the argument of counsel. The assignment is overruled.

▮▮▮ The defendants say the trial judge erred in instructing the jury on the Fifth Amendment right of defendants to not testify.

The trial judge instructed the jury that they were to draw no inference or place any emphasis upon the facts that defendants did not testify, which was their right. He instructed on the presumption of innocence, etc., and the fact of the State's burden to prove guilt beyond a reasonable doubt irrespective of whether or not they testified. The instruction was proper and there was no error. See *Rowan v. State*, 212 Tenn. 224, 369 S.W.2d 543.

▮▮▮ Defendants find error in denial of several special requests for jury instructions

and charge that the instruction on "cause of death" was erroneous.

We have examined the record and are satisfied that the general instructions to the jury adequately covered all of the points raised in the special requests submitted for special jury instructions. Defendants are entitled to no more. The trial court's instructions on "cause of death" was given in accord with the law in this State on the subject. *Odeneal v. State*, supra; *McCord v. State*, supra. We overrule the assignment.

▮▮▮ Defendants charge error on the trial court's refusal to allow introduction of the entire medical record of the deceased, Wright, through the testimony of the medical records librarian from St. Mary's Hospital where the victim was treated as a patient prior to his death, under provisions of the Uniform Business Records as Evidence Act.

The State was willing to stipulate the records to be those maintained at St. Mary's Hospital, and agreed to their introduction except for certain opinions and conclusions of the treating physician and the pathologist who had performed an autopsy on the body. Both of these physicians had previously testified in the case. The trial judge approved the State's objection and allowed the introduction of the records without the objected to portions.

The trial court ruled correctly in the matter. Since the trial of this case our Supreme Court has rendered an opinion in the case of *Graham v. State*, 547 S.W.2d 531 (Tenn. 1/31/77), analyzing and restating the law on the admissibility of hospital records. In substance, as it applies here, the rule is that the records were admissible except for the opinions and conclusions of the doctors whose qualifications were not shown and where the opposing parties would be deprived of the right of cross-examination. It seems to make little difference in this case since both of the doctors, the admission of whose reports and conclu-

sions brought on State objection, had already testified as State witnesses and had been available for cross-examination. The assignment is overruled.

■ Defendants charge that the trial court erred in instructing the jury in accordance with T.C.A. Sec. 40–2707.

The assignment must be overruled. In the opinion on Petition to Rehear in *Farris v. State*, 535 S.W.2d 608 (Tenn.1976), our Supreme Court specifically said:

"In order to clarify further our holding in this case we point out that the fact that a trial judge, prior to the release of our opinion, may have charged the jury on parole considerations does not necessarily mean that the error is reversible or that we will follow the Farris procedure."

Citing from *Rogers v. State*, 196 Tenn. 263, 265 S.W.2d 559, the court went on to say, " . . .. Every case must be governed by its own facts, and a decision made according to the demands of law." As conceded in the brief for defendants, the appellate courts in this State have been consistent in holding that the indeterminate sentence law (T.C.A. Sec. 40–2707), is not applicable to capital offenses. See *State v. Henderson*, 1 Tenn.Cr.App. 47, 428 S.W.2d 800. After being properly instructed on the lesser included offenses to those charged in the indictment, the jury saw fit to find defendants guilty of murder in the perpetration of armed robbery. The suggestion that had the jury not been instructed in accordance with the pardon and parole statutes they might possibly have returned a verdict on some lesser included offense cannot be sustained. The jury was presented with evidence that defendants were guilty of a cold-blooded, premeditated, malicious and heinous assault upon the victim, in the course of a robbery, which ultimately resulted in his death.

We are further constrained to overrule the assignment because the death sentences in this case have been commuted by the Governor to life imprisonment in the penitentiary. In *Collins v. State*, supra, our Supreme Court, in holding that this commutation by the Governor was constitutionally permissible and lawfully imposed, had this to say:

"In a criminal case it is the right of the jury to determine the law and the facts. In these cases each jury was instructed as to first degree murder, second degree murder, and all lesser included offenses. The two juries had the opportunity and the authority to impose a lesser sentence but declined to do so. Since the defendants received the maximum penalty of death at the hands of juries, there is nothing in our statutory or constitutional law or the decisions of this Court requiring that they be given a second jury trial as to punishment under the circumstances presented here."

■ Error is assessed for failure to grant a hearing and set aside judgment in this case on the basis of newly discovered evidence.

Subsequent to the trial, and while the matter still reposed in the bosom of the trial court, a motion to set aside the judgment was filed alleging that new evidence had been discovered and requesting an evidentiary hearing into the matter. The motion was accompanied by an affidavit to the effect that the witness William T. Valerio had been "scared" and under much pressure from the police; had been separated from his mother for three nights and two days; had been provided with a statement by Knoxville police officer which was to be his testimony, and admonished to memorize the statement and to take the copy with him. The officer purportedly threatened the witness by saying that his fingerprints were on the coca cola bottle which had been used to beat the victim. The affidavit is seemingly signed by Emma J. Williams, Willim T. Valerio, III, and Laura E. Hicks. The motion was also accompanied by an affidavit of counsel to the effect that they had exercised ordinary diligence in obtaining the information, and bringing it to the attention of the court.

The affidavit accompanying the motion does not meet the requirements to establish newly discovered evidence as a basis for a new trial. As we said in *Jones v. State*, 2 Tenn.Cr.App. 160, 452 S.W.2d 365, citing from *Ross v. State*, 130 Tenn. 387, 170 S.W. 1026:

" . . .. An accused seeking a new trial on the ground of newly discovered evidence must file an affidavit setting forth the facts showing that he and his counsel exercised reasonable diligence and were not negligent in the search for evidence in preparation for the trial of the case, that he and his counsel had no pre-trial knowledge of the allegedly newly discovered evidence, and it must be supported by the affidavit of the new witness showing materiality of the testimony and that it had not been communicated to the accused prior to trial."

*Ross v. State*, supra, contains a very comprehensive analysis of the requirements for an application for new trial on newly discovered evidence, as well as pertinent comments on why such an application should be looked upon with great discernment. It is said there that applications of this kind are not looked on with favor, but on the contrary, rather with distrust. The chief reason is the great temptation to perjury and the subornation of perjury, . . ..

In *Rosenthal v. State*, 200 Tenn. 178, 292 S.W.2d 1, the court reasoned as follows:

"This Court held in *Gentry v. State*, 184 Tenn. 299, 198 S.W.2d 643, 648, that a new trial was properly refused where the newly discovered evidence purported to show that a material witness of the State had committed perjury in his testimony at the trial, quoting from 39 Am.Jur., New Trial, Section 167, p. 173: ' "It is well settled that a new trial will not be granted upon the ground of newly discovered evidence where it appears that such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, contradict a witness's statements, or impeach a witness, unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing, that a different result must necessarily follow. * * *" '

The State cites to the same effect, 16 C.J., p. 1205, Section 2730, in part as follows: 'The trial court has the right to determine the credibility of newly discovered evidence for which a new trial is asked and if the Court is satisfied that, on a new trial such testimony would not be worthy of belief by the jury, the motion should be denied. The newly discovered evidence will not be accepted as ground for a new trial unless the Court can see that its admission on a new trial will probably produce a result more favorable to defendant than the verdict on the original trial. The question is not what they jury might do, but, supposing all the evidence new and old to be before another jury, whether they ought to return a verdict more favorable to defendant than the one returned on the original trial.' See also 23 C.J.S. Criminal Law § 1461."

While the affidavit signed by William T. Valerio, the witness, his aunt, Emma J. Williams, sister of the defendant, Evans, and Laura E. Hicks, mother of Valerio, and also sister of Evans, says that he was threatened by a police officer, it does not say that his trial testimony was false. It does indicate that the information contained therein was known, not only to the witness, but to the other affiants, prior to the conclusion of the trial, yet the affidavit was not made until nearly a month after argument on the motion for new trial. It seems inconceivable that purportedly newly discovered evidence of such a serious nature, known to two adult affiants, sisters of the defendant, would not have been made known to him at some previous time. The trial judge reviewed the affidavit attached to the motion, heard argument of counsel and testimony of one of the lawyers representing the defendants. In overruling and denying the motion he stated his reasons to

be, among other things, that there were disinterested eyewitnesses who placed the defendants at the scene of the crime and substantial evidence within the record tending to show their guilt prior to the time the witness William T. Valerio took the stand. The Court observed the witness, Valerio, and the manner in which he was examined by counsel. He was impressed with the fact that his testimony had the ring of truth about it. Having read this record with extreme care we conclude that there was no abuse of discretion on the part of the trial judge in denying the motion to set aside the judgment. The assignment is overruled.

Defendants have made a complaint about the procurement of the witness, Valerio, through the Uniform to Secure Attendance of Witnesses Act.

Valerio was a resident of Florida. It appears that prior to the trial his name was added to the indictment as a witness for the State. Defense counsel was properly notified of this action. Shortly thereafter the State filed a written motion to compel the attendance of this witness. The motion was granted ex parte, in accordance with the statutes, (T.C.A. Sec. 40–2435, et seq.). It is defendant's contention that a local rule of the Knox County Criminal Court requires all motions to be filed in duplicate and directs the clerk to deliver the duplicate copy to opposing counsel. That failure to comply with this procedure in this case was a violation of due process.

The grounds stated on this assignment were not presented for determination in the lower court on the motion for new trial, and so are not subject to appellate review. *Wilkerson v. State*, 208 Tenn. 666, 348 S.W.2d 314; *Kirby v. State*, 214 Tenn. 296, 379 S.W.2d 780. The rule of the Knox County Criminal Court referred to was not proved in the trial below, nor was it incorporated into the Bill of Exceptions. This Court cannot judicially know the rules established by the Circuit Court, and for the reason stated the Court rule is not properly before us. See *Talley v. Talley*, 51 Tenn. App. 622, 371 S.W.2d 152. In any event there was no denial of due process. The

witness was granted no immunity except from arrest or service of process which is a guarantee, not so much for the benefit of the witness, as for the parties involved in legal proceedings to assure them the inalienable right to require the attendance of witnesses on their behalf free of the prospect of legal oppression by any government agency.

This has been a very interesting case. The record contains more than a thousand pages. The briefs of counsel are voluminous, though prepared in great detail and with expertise. We commend counsel for their fine work on behalf of these indigent defendants. Having perused the record with minute care we do not find error in the trial proceedings, and conclude that the defendants have had a fair and just trial. The judgment of the trial court is affirmed, as commuted.

GALBREATH, and RUSSELL, JJ., concur.

GALBREATH, Judge, concurring.

I concur in the result reached in Judge O'Brien's exhaustive opinion, although I agree with appellant, Emmit Evans, that he was denied the right to confront his co-defendant Marion Smith, concerning statements by Smith implicating Evans, as recounted by the witness Valerio. That these statements were made as part of an alleged conversation between the two defendants should not, it seems to me, take them out of the *Bruton* rule. Whatever Evans said, of course, would be admissible. What Smith said should not, as I see it.

However, I would hold the error harmless in view of the other independent and competent evidence of Evans' participation in the murder. I am convinced beyond a reasonable doubt that the complained of testimony did not effect the verdict. *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758 (1964); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).