STATE of Tennessee ex rel. Robert F. PRICE, Appellant,

v.

H.Q. EVATT, Sheriff of Hamilton County, Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, At Knoxville.

Jan. 12, 1983.

Permission to Appeal Dismissed by Supreme Court April 4, 1983.

Jerry H. Summers, Chattanooga, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Stanley J. Lanzo, Asst. Dist. Atty. Gen., Chattanooga, Buzz Franklin, Asst. Prosecutor, Lafayette, Ga., for appellee.

## OPINION

DWYER, Judge.

The trial court dismissed appellant's petition for writ of habeas corpus after holding two hearings.

The appellant was arrested on a fugitive warrant, T.C.A. § 40-1003 (1975), after a warrant accusing him of murder had issued for his arrest in the State of Georgia. The appellant was accused in the State of Georgia of killing a Roger D. Norman around 12:01 to 1:00 a.m. July 8, 1981, in or near Trenton, Georgia. The first habeas corpus hearing before the trial court was held on May 19, 1982, on the fugitive warrant that had issued for his arrest in this State. The second hearing was held on May 28, 1982, a rendition warrant having been issued by the Governor of this State on May 26, 1982. The trial court dismissed the petition for habeas corpus and ordered appellant delivered to the Georgia authorities.

The appellant raises four issues on appeal: (1) whether the trial court erred in denying petitioner's writ of habeas corpus when the evidence introduced below showed petitioner was not in the State of Georgia on the date and at the time the murder petitioner is charged with committing in Georgia took place; (2) whether the trial court erred in requiring petitioner to rebut a prima facie presumption that he was in the State of Georgia when, at the time of the hearing below, the Governor of the State of Tennessee had issued no warrant to extradite petitioner to the State of Georgia; (3) whether the trial court erred in admitting evidence as to a possible conspiracy to commit murder in the State of Georgia; (4) whether the trial court erred in admitting into evidence testimony by Connie Holt Chambers relating to hearsay declarations of her ex-boyfriend, William Kilgore.

Upon the issuance of the Governor's rendition warrant, judicial review by the trial court is limited to four issues. *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978): (a) whether the extradition documents are in order on their face; (b) whether the demanding state has charged the petitioner with a crime; (c) whether the person named in the request for extradition is the petitioner before the court; and (d) whether the petitioner is a fugitive. The only issue contested by appellant at the hearing was (d), that since he was not in Georgia at the time of the offense, he could not be a fugitive. The burden was therefore upon the appellant to prove beyond a reasonable doubt his nonpresence. *State v. Turner*, 207 Tenn. 93, 96, 338 S.W.2d 558, 559 (1960).

We are unimpressed with the appellant's argument that he was not required to prove beyond a reasonable doubt his absence from Georgia. While the hearing was initiated on the fugitive warrant, that document was only necessary to take appellant into custody pending arrival of the rendition warrant. Prior proceedings become immaterial when the rendition warrant arrives. *State ex rel. Zahnd v. Head*, 185 Tenn. 462, 464, 206 S.W.2d 426, 427 (1947); *State ex rel. Van Scoyoc v. State*, 171 Tenn. 357, 103 S.W.2d 26 (1937). In other words, the trial court could and did apply to the evidence adduced at both hearings the proper standard of beyond a reasonable doubt upon the arrival of the rendition warrant. How the State and appellant could reach an agreement to hold the Governor's warrant in abeyance is questionable.

In dismissing the petition, the trial court held that the appellant had not proven by his evidence that he was not in Georgia at the time of the homicide and thus not involved in the crime. We will review the evidence adduced by both appellant and State at the hearings.

The appellant offered alibi proof through his wife, son, and work supervisor, a Mr. Swingle. The wife and son related that on

the evening of July 7, 1981, the appellant was at home in Chattanooga and had dinner with them. The son testified that he called his father at his place of employment around 12:15 a.m. on the 8th of July and spoke with him over the telephone. The wife related that the appellant left home around 11:30 p.m. for work. Mr. Swingle testified that the appellant was at work on the dock on July 7 and that the appellant had told him that he could not find his time card. Mr. Swingle further related that while the time card showed appellant stamped in between 1:00 and 1:59 a.m., he, Mr. Swingle, had corrected the card to reflect appellant's true arrival at work around midnight.

On cross-examination, the appellant's wife testified that the appellant had left his job at the Robinson Freight Line in September 1981 and became the live-in bodyguard to Brenda Norman, wife of the decedent.

The State offered proof through a Connie Chambers, live-in girl friend of a Bill Kilgore who had been convicted in Georgia of the murder of Roger Norman. On July 5, 1981, Kilgore and Chambers had gone to a Tom Carden's house where Kilgore had received money to kill a man and for a drug deal. They left Carden and went to a V.F.W. club where Kilgore put a rifle in the appellant's van. She did not see the appellant there. She further related that around 6:00 p.m. on July 7, 1981, she saw Kilgore and the appellant in front of her house. The appellant left in his van and Kilgore soon left in the same direction. The next day she and Kilgore left for Florida. On the way back he told her, "Honey, all mighty hell is going to break loose.... Because we killed a man." He told her the murder had occurred near Trenton, Georgia.

The State's evidence also revealed that Kilgore was a co-worker and associate of the appellant, and that their place of employment was twenty to twenty-five minutes from Trenton, Georgia.

■ The evidence supports the trial court's finding that appellant had not carried his burden as required and proven beyond a reasonable doubt that appellant was not in Georgia or not implicated in the murder. On page 115 of the transcript of the evidence, the trial court states:

"Counsel has stated the issues to be .. whether the defendant has proven beyond a reasonable doubt, on that standard the record falls short. The Court has considerable doubt on the time card, considerable doubt on several matters. I'm not persuaded as to the van, neither as to the tags or to the identity of the van and its color. The defendant's proof has not risen to the standard set forth by counsel."

Summed up, the trial court found that there was a question as to whether he was in the demanding state. *State v. Turner,* *supra,* 207 Tenn. at p. 97, 338 S.W.2d at 559. It cannot be said that the evidence showed clearly and satisfactorily appellant was not a fugitive from justice. *State ex rel. Van Scoyoc v. State, supra.* The first and second issues are overruled.

■ In regards to appellant's third and fourth issues, the strict rules of evidence are not applicable in settings of this kind. The trial court could and did consider Connie Chambers Holt's testimony and give it whatever probative force the court desired. *McLaughlin v. State,* 512 S.W.2d 657 (Tenn.Cr.App.1974). The evidence before the court was rather clear that Kilgore and appellant were conspiring to commit a murder. Whether appellant was charged by Georgia with conspiracy would not determine whether this evidence is to be ruled out. *Randolph v. State,* 570 S.W.2d 869 (Tenn.Cr.App.1978); *Evans v. State,* 557 S.W.2d 927 (Tenn.Cr.App.1977).

The issues overruled, the judgment of the trial court in dismissing the petition is affirmed.

CORNELIUS and SCOTT, JJ., concur.