# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 27, 2005 Session

## STATE OF TENNESSEE v. JOHN CALVIN SIPE, JR.

**Appeal from the Criminal Court for Hamblen County**
**No. 04-CR-040 & 04-CR-041   James Edward Beckner, Judge**

---

**No. E2005-00039-CCA-R3-CD - Filed December 16, 2005**

---

A Hamblen County jury convicted the defendant of theft of property, $500-$1,000, and forgery of assignment of title. On appeal the defendant presents three issues: (1) Whether there was sufficient evidence to support the jury's verdict; (2) whether the trial court erred in refusing to grant a retrial based upon newly discovered evidence; and (3) whether the trial court imposed an excessive sentence. We have reviewed the record and have found all of the defendant's issues to be without merit. Therefore, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ALAN E. GLENN, JJ., joined.

D. Clifton Barnes, Assistant Public Defender, Morristown, Tennessee, for the appellant, John Calvin Sipe, Jr..

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Kim Lane, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In February, the victim, Sharon K. Lindsey, purchased a 1992 Oldsmobile from the defendant. She gave the defendant a check for $1,000 made out to him, and a check for $144 made out to Morristown Auto Sales, where the defendant worked, for taxes and tags. The defendant never gave the victim a title or a bill of sale. She asked several times, but he told her the title was at the car lot, and he would have to pick it up. The defendant brought her the tags and the registration, but she never received the title.

On December 6 and 7, 2002, the victim was moving out of her apartment. Her apartment was owned by the defendant's mother. She stated at trial that she was trying to sneak her stuff out of the apartment because she was afraid that some of her belongings would be taken. She loaded her car and her brother's truck full of her belongings. The victim then went to her job at Wal-Mart without unloading her car. At this point she had had the car for about nine months. The defendant never said that the victim owed him more money, and never threatened to repossess the car. On December 7, 2002, the victim left her job at Wal-Mart at 6:15 in the morning. When she came out to the parking lot, her car was gone. She called the police. The police eventually informed her that the defendant had repossessed her car. The victim attempted to call the defendant to discuss the repossession of her car. Eventually the victim called the police because she maintained that the defendant stole her car. At trial, the victim was shown a copy of the title to the car. She said that her name did indeed appear on the title. There was a signature on the title that appeared to be hers, however, the victim denied that the signature was hers.

Abdulla Al-ghandi, the owner of Morristown Auto Sales and the defendant's employer also testified at trial. He stated that he remembered the car that the victim bought from the defendant. Mr. Al-ghandi stated that they purchased the car at auction in Abingdon, Virginia. The defendant then purchased the vehicle from Morristown Auto Sales for $400. The car had a bad engine, and the defendant had to haul it to his house because it could not be driven. Mr. Al-ghandi stated that the defendant did not register the car to the defendant's mother. He also stated that he received a check for $144 for tax and tags for the car. The defendant told Mr. Al-ghandi that he sold the car for $1,000.

Rick Harmon, a detective with the Morristown Police Department, investigated the theft of the victim's car. He included in his report that the car had been stolen from the Wal-Mart parking lot and was then "reportedly repossessed by [the defendant] from the owner." Detective Harmon learned that the victim never received the title to the car. Detective Harmon then contacted the Tennessee Highway Patrol, Criminal Investigation Division. He was assisted by Agent Terry Wolfe.

Terry Wolfe is a special agent in the Criminal Investigation Division of the Tennessee Department of Safety. He obtained a title history for the vehicle from the Department of Safety. Agent Wolfe found that the title had been issued to Sharon Lindsey, the victim, with the defendant registered as the lienholder. The price of the car was listed as $1,000. Agent Wolfe also found that the car was then sold and re-registered to Christopher and Amber McCullough. The title was issued April 1, 2003 to the McCulloughs. The McCulloughs were renting an apartment from the defendant's mother at the time. The title also indicated that the date of sale was December 6, 2002, the same day the car had been stolen from the victim. Agent Wolfe stated that there would be no need for a lien on the car because the victim had apparently paid for the vehicle in full. Agent Wolfe seized the car from the McCulloughs, and released the car to the victim. Agent Wolfe then charged the defendant with forgery and theft.

Assistant Special Agent Billy Grooms also works in the Criminal Investigation Division of the Tennessee Highway Patrol. He participated in the investigation of the theft of the victim's car

and the forgery of the title to the victim's car. He interviewed the defendant after his arrest. During the interview, the defendant admitted that he signed the victim's name on the title and put himself down as lienholder. The defendant told Agent Grooms that the victim did not owe him money for the car, but instead owed money for back rent. After a new title was issued in the victim's name, Agent Grooms personally took the title to the victim.

Special Agent Tim Ryan with the Tennessee Highway Patrol worked with Detective Harmon and Special Agent Grooms in investigating the case, arresting the defendant, and taking the defendant's statement. Special Agent Ryan testified that he took the defendant's statement. The defendant told Special Agent Ryan that he and the victim had agreed to a $2,000 price on the car and agreed to a weekly $50 payment. When the defendant received no further payment, he repossessed the victim's car in the Wal-Mart parking lot. Later in the interview, the defendant admitted that he signed the title to the victim's car.

The defendant did not testify on his own behalf at trial, but he did present two witnesses at trial. The first witness, Charles Goodwin, knew both the defendant and the victim. He stated that on March 2, 2002, he overheard a conversation between the defendant and the victim. In this conversation he heard the defendant ask the victim if it was all right with her if he signed her name to the title or registration so it would be in the victim's name. Mr. Goodwin stated that the victim replied that it would be all right with her if the defendant signed her name. The witness also testified that the victim paid the defendant a portion of the purchase price of the car and that is why the defendant put a lien on the car.

The defendant's second witness was David Richards. Mr. Richards knew the defendant from working at the defendant's mother's house. He also overheard a discussion involving the purchase of the Oldsmobile. The witness stated that the purchase price was $2,000 and that the victim was to pay the mechanic for work on the motor. Mr. Richards saw the victim hand the defendant a check and then the defendant told the victim that he needed her to sign some papers. The witness then heard the victim tell the defendant to sign the papers needed to get her tags.

After the presentation of the evidence, the jury retired to deliberate. The jury found the defendant guilty of theft of property for $500-$1,000 and forgery of the assignment of title. The trial court held a sentencing hearing November 30, 2004. As a result of that hearing, the trial court sentenced the defendant as a Range II multiple offender to three years for each conviction, to be served concurrently. The defendant appeals these judgments.

## ANALYSIS

The defendant brings three arguments to this Court on appeal: (1) Whether there was sufficient evidence to support the jury's verdict; (2) whether the trial court erred in refusing to grant a retrial based upon newly discovered evidence; and (3) whether the trial court imposed an excessive sentence.

**Sufficiency of the Evidence**

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The jury convicted the defendant for theft of property $500-$1,000 and forgery of assignment of title. Theft of property is found at Tennessee Code Annotated section 39-14-103. Tennessee Code Annotated section 39-14-103 states, "[a] person commits a theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Forgery of assignment of title is found at Tennessee Code Annotated section 55-5-116, which states, "[i]t is a Class E felony for any person to . . . (2) Alter or falsify with fraudulent intent or forge any assignment upon a certificate of title; . . . ."

The evidence at trial showed that the victim gave the defendant a check for $1,000 for the car in question. The victim testified that this was the full purchase price of the car and other evidence established that the price was $1,000. The defendant never asked for additional money or gave any warning that he was about to repossess the car. The defendant also never gave the victim a bill of sale or the title to the car. After the victim had had the car for about nine months she left her job at Wal-Mart to find that her car, containing all her belongings, was gone. The police discovered that the defendant had taken the car, claiming it was lawfully repossessed. The same day that the defendant took the car, he signed the victim's name to the title and sold the car to a third party. The defendant later told the law enforcement officers working on the case that the victim actually owed him money for back rent rather than the car. He also admitted to the officers that he signed the victim's name to the title.

The defendant argues that the victim's check for $1000 was noted to be for a car payment. He also points to another check for $75 noted to be for a car payment. At trial, the victim argued that this check was actually for a car part. Apparently, the defendant is attempting to argue that this additional payment is proof that the victim owed the defendant additional money for the car. The defendant also states that the State did not prove that the defendant intended to harm the victim. He also argues that the fact that he signed the victim's name to the title was not a crime.

The arguments raised by the defendant are not legal questions, but instead questions of fact concerning whether the evidence met the elements of the crimes of which the defendant was convicted. As we stated above, questions of fact, as well as determinations of the credibility of witnesses, are reserved for the jury. It is obvious in this case that the jury credited the testimony of the State's witnesses.

We conclude that there was sufficient evidence to support the finding that the defendant wrongfully signed the victim's name to the title and wrongfully took the victim's vehicle. There is ample evidence for a rational trier of fact to determine that the defendant is guilty of both theft of property and forgery of assignment of title.

Therefore, this issue is without merit.

### Newly-Discovered Evidence

The defendant also argues that the trial court erred in not granting a new trial based on newly-discovered evidence. A hearing on the defendant's motion for a new trial was held on December 17, 2004. At that hearing the defendant presented a witness, Tonya Jones, who is the victim's son's girlfriend, as well as the mother of the victim's grandchildren. She stated that the victim did indeed know that there was a lien held by the defendant on her vehicle. The witness testified that she did not know that the trial was still pending on the matter in question until she saw the victim in the hall, while the witness was in custody as a trustee. She also stated that she has never spoken to the defendant.

At the conclusion of the hearing, the trial court made the following findings with regard to the newly-discovered evidence:

> The case was primarily a who-are-you-going-to-believe case, and it's been characterized by defense counsel as a close case and, yet, the jury came back with one of the quickest verdicts that I've ever known them to come back with. The jury didn't perceive it to be a very close case on the issues of credibility, and I don't think any of the jurors knew Mr. Sipe or said they'd ever known him but they very quickly disbelieved him and believed Ms. Lindsey. So that very well could make this issue more germane than it would otherwise. However, this witness, who has sworn under oath that these things happened, herself is impeachable by prior offenses involving truth or dis – involving dishonesty and false statement. And her credibility is very

-5-

suspect with a jury that was able to so quickly decide the issue of credibility in favor of the state.

And, two, it is cumulative, and it is corroborative of other evidence that was presented to the jury and is not a singular type of evidence that would stand out by itself because there were other witnesses that indicated that the victim knew of the lien and the circumstances and what the witness was saying was not true.

Newly discovered evidence requires, of course, that it be something that even after due diligence a person could not discover prior to the time it was discovered after the trial. Ms. Jones was here in custody and was, in fact, was assigned in the upstairs portion here adjoining the courtroom and in this courtroom to cleaning and doing things in and about the halls of the courtroom; and that's apparently where she saw the victim during the course of this trial. It would seem that during the course of that trial that it would have been appropriate for the evidence to be revealed at that time, and I realize that defense counsel correctly says that doesn't help him out any if it should've been done, but it is evidence it seems to me that it could and should under all circumstances prior to the time that it was revealed post-trial.

For all those reasons, I believe that no different result would have or could have occurred than that did occur and, therefore, the motion for new trial is overruled . . . .

To receive a new trial on the ground of newly discovered evidence, a defendant must demonstrate "(1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence;" and (3) the likelihood that the evidence would change the outcome of the trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994) (citing State v. Goswick, 656 S.W.2d 355, 358-60 (Tenn. 1983)). Additionally, the decision regarding whether to grant or deny a motion for a new trial predicated on newly discovered evidence "rests in the sound discretion of the trial court." State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995). Moreover, the trial court is authorized to ascertain the credibility of newly discovered evidence for which the new trial is desired, and the motion should be denied unless the court has assured itself that the testimony would be worthy of belief by the jury. Id. As a general rule, "newly discovered impeachment evidence will not constitute grounds for a new trial. . . . But if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered." State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993) (citing Rosenthal, 292 S.W.2d at 4-5; State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985); Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977)).

We find no abuse of discretion in the trial court's denial of the defendant's motion for new trial based upon newly discovered evidence. As the trial court stated, other witnesses who testified for the defendant at trial also stated that the victim did indeed know that the defendant placed a lien

on the car. Therefore, we agree with the trial court that the evidence presented by this witness would be cumulative. In addition, we believe the trial court's assessment that the witness's credibility would be seriously questioned because of previous convictions involving dishonesty. Considering the above two conclusions, we find it highly unlikely that this evidence would have changed the outcome at trial. As for the defendant's diligence in discovering this evidence, we understand that this evidence may have been difficult for the defendant's attorney to discover. However, to be successful in obtaining a new trial based upon newly-discovered evidence, the defendant must demonstrate all three of the requirements listed above. In this case, we conclude the evidence in question is cumulative to that presented at trial as well as very unlikely to change the outcome of the trial.

Therefore, this issue is without merit.

## Sentencing

The defendant was sentenced to three years for each of his two convictions to be run concurrently, with a release eligibility of 35% as a Range II multiple offender. The defendant's argument with regard to his sentence reads, in its entirety, as follows, "The appellant asks this court to review the sentencing pursuant to it authority as set forth in T.C.A. § 40-35-401."

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See also State v. Sanders, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). The appellant fails to present any argument to this Court as to his specific question concerning his sentence. We conclude that the above general statement does not constitute an argument. Therefore, this issue is waived for failure to present an argument.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE