HENRY C. WILKERSON

*v.*

STATE OF TENNESSEE.

(*Nashville,* December Term, 1960.)

Opinion filed July 26, 1961.

WILLIAM A. McTIGHE, Memphis, for plaintiff in error.

WALKER T. TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Wilkerson was convicted of an assault and battery upon a female under twelve years of age with the intent to carnally know her (Section 39-3705, T.C.A.) and was sentenced by the jury for this offense to serve fifteen years in the State penitentiary.

The prosecutrix in this case is a child, who was nine years old at the time of the offense, and about a year older when the case was tried. The plaintiff in error is a man fifty-four years of age. On a day in December, 1959, the plaintiff in error asked the young girl if she would go to the grocery with him, but instead of going to the grocery, the plaintiff in error proceeded to a field near the

intersection of University Street and Vollentine Street in Memphis.

The plaintiff in error drove his car into the field and parked it near a wooded area, and after doing so instructed the young girl to remove her pants. After the child had removed her pants the plaintiff in error got out of the car and proceeded to the opposite side from the driver's seat, took down his pants and proceeded to violate the young girl.

After the plaintiff in error had finished and was attempting to turn his automobile around in order to leave, he became stuck in the soft mud. After trying several methods of getting the car out of the mud he was unable to do so. This being true, he and the young girl walked several blocks to a filling station and after some insistence got the filling station operator to get a friend of his to join them and send a car and assist in removing this car from the mud. The car which came to the assistance of the plaintiff in error ran out of gas and was unable to remove the plaintiff in error's car. Thus it was that it became necessary to go back again and get a real wrecker to come and these cars were then pulled out of the mud.

After this was done the plaintiff in error gave the child a dollar and put her in a cab and sent her home, telling her not to relate anything concerning what had transpired. He further told the child to tell his wife that he had had car trouble at the grocery.

About six months after this occurrence, to-wit, on May 24, 1960, the child in walking to school one day with a playmate, and seeing the plaintiff in error apparently following them on the street, told her playmate what had happened to her. This playmate in turn told her mother

who informed her father of the occurrence, and as a result of this the father notified the police.

The police conducted a rather extensive investigation, which eventually ended up in the arrest of the plaintiff in error. While the plaintiff in error was being examined by the police upon his arrest, he informed them that he had not been in this field. The police then confronted him with the fact that they knew that he had been stuck in this field on the day in question, and the plaintiff in error stated, before having been accused of tampering with this child, that he "hadn't done anything to the little girl."

The child in the meantime had been taken to a local hospital and given an examination by a physician in an attempt to determine whether or not she had been violated. The doctor testified, and his report showed, that there was no physical violence to the child and only that the child's hymen was not intact. The doctor says though that this might be caused by a number of reasons, one of which might be an attempt to an insertion or to have intercourse with her.

There are numerous assignments of error, but insofar as those that can be considered are concerned they largely stem around the factual issue of whether or not after a six months delay this child can relate these occurrences. In other words, the argument is that with such a long delay the probability is that the statements of the child are a fabrication and thus are not competent upon which a conviction can be had. We will not attempt to repeat the various assignments seriatim but in the course of this opinion will deal with those that we think are necessary for a just and proper determination of this case.

The defense is largely pitched on the holding of this Court in *Curtis v. State,* 167 Tenn. 427, 70 S. W.2d 363. In this case it was held that corroboration required under the carnal knowledge statute, Section 39-3706, T.C.A., is not required in a prosecution under the statute on which this case was prosecuted, to-wit, Section 39-3705, T.C.A., which is the statute prescribing the crime of attempting or having carnal knowledge of a child under twelve years of age. The Court said that ''we do not concur in the insistence made that the requirement expressed in the violation of the age of consent statute for corroboration of the female extends to prosecutions under the statute now before us * * *.'' The obvious reason for this holding and finding is that in the statute, 39-3705, T.C.A., there is no requirement for corroboration while in the following statute, it is provided that no conviction shall be had ''on the unsupported testimony of the female in question; * * *.' It is ably argued through by defense counsel that the rule applicable to offenses under Section 39-3706, where the statute requires corroboration, should likewise be applicable under the Section under which this conviction is had, because of the delay in time before the child told of these occurrences. Under the factual situation as presented in this case, we are inclined to agree with this argument. We feel though that in view of the developments here, as hereinbefore related and hereinafter commented on, that there is sufficient corroboration to give ample credibility to the statements of this prosecutrix.

We are not in the case now before us dealing with statements made by the prosecutrix to one outside of the trial who in turn was offered as a witness to corroborate the statements that the child had told them very soon after the happenings of the event as was in the Curtis case. The

question dealt with in the Curtis case, supra, is to an objection made to statements offered as substantive evidence of testimony of older sisters of the child who was violated in that case, which statements were made to these older sisters some year after the event. That is not the question we have here, because in the present case this testimony, or statements made by this little child to her friend above related, was not admitted, and it is not offered as evidence or the evidence of any statements that she made to anyone else. Here the child is offered as a witness as prosecutrix and after being qualified very carefully by the trial judge she was sworn and relates the events of this happening.

■ Her evidence thus offered, even though she did not relate this until some six months after the happening of the event, is offered to the jury from her mouth. Thus it is that the delay in her telling of this merely affected her credibility which was for the jury to determine. In *State v. Haston,* 64 Ariz. 72, 166 P.2d 141, that court held under a similar situation that where a female is under the age of consent, evidence of failure to make complaint was held not relevant, or in other words that it did not prevent the evidence from being worth what it was, and it was for the jury to consider all the facts as to whether or not this evidence was credible.

In the Curtis case this Court makes the statement that, "The authorities generally hold that, if the complaint is delayed and no satisfactory reason for the delay is shown, the complaint is not admissible. 52 C.J., 1065." This statement is misleading because in the Curtis case the objection that this Court ruled on was to the statements that the older sisters made in attempting to tell what

their younger sister told them a year after the occurrence. The Court was not there ruling on the direct testimony of the victimized child, as is being done in this case. This authority, that is 52 C.J., 1065, when examined shows clearly that what is said in our report was not held by this text. This text, that is 52 C.J., 1065, says this:

"The mere lapse of time, however, between the commission of the crime and the complaint, alone, does not preclude testimony of a complaint, delay in complaining being explainable by testimony as to the surrounding circumstances, such as intimidation of the prosecutrix by threats or lack of opportunity." etc. See also 75 C.J.S. Rape Sec. 53, p. 525.

We must reach the inevitable conclusion that this is not a bar to such testimony but merely weakens it and leaves for the jury to consider all of the circumstances.

There is no particular fear, or anything of that kind shown in this case. The child merely says that the man told her it would be "worser" on her than it would be on him if she told it. When we consider the factual situation of this little girl who had never known a father and whose mother was sick and in the hospital, etc., and her spending a great part of her time in the man's home and other factual situations hereinafter related, her immaturity and environment, etc., when we take those things into consideration, it is readily seen how the jury could and would excuse a delay in telling this. Then, too, there is the fact that she related it under circumstances when she thought the man was following her around the block again and related to her little friend who was there that she wanted to get away. She didn't tell it to this little friend of hers with any sense of having the man prosecuted or doing

anything to him, but with the sense of fear and trying to get away from him with the fear that he wanted to get a hold of her and do this thing again. Thus it was that through this kind of relationship that this prosecution came about. Therefore it is very easy to see how the jury gave her complete credit.

A careful reading of this record discloses from the testimony of this child that on at least two occasions prior to the time of the event for which this prosecution was fixed, this man had attempted to have intercourse with this child, but apparently by reason of her age there was no penetration and commission by the man. On of these occurences happened when the child went with the man and his wife to visit a relative of theirs in Mississippi, and she relates in very definite detail just how she went out with the man to see horses, hogs, and things of the kind in the country, and when he got out there he got on top of her and attempted to commit this act. These things are confirmed in such a manner that it makes them believable by the plaintiff in error himself when he takes the witness stand, though he denies, of course, all of the occurrences yet his testimony convinces us, as it did the jury, that the child is telling the truth.

Then there is another occurrence that she relates how the man came to her school and got her out of her classes and took her around and suggested that she hide her head when they were getting near his home and that she was then to duck and go around and come in the back door in the house. He attempted to have relations with her again there in the home. Right here it might not be amiss to say, that the present wife of this man was several years older than he was and it was intimated in the record that

she was a mental case. These details are told by this child and are very convincing, when they, too, like the Mississippi event are followed up by the denial of the man when he takes the witness stand as to having this relationship, yet he does admit going to school and getting the child out of her school in the middle of a school day just to ask the child which of certain bills that the child's mother wanted the man to pay with the mother's money. These things obviously convinced the jury that the child was telling the truth and the man was telling a falsehood about it, because there was no earthly reason why this fifty-four year old man should go and get this nine year old girl out of school in the middle of the day and take her away from school merely to ask her whether to pay a light bill or gas bill or what not. All of these things along with the man's statements that he made when first arrested in denying that he was ever down in the mud off the road in this wooded area and then making the statement that the reason he went down there on a cold, damp December day in these woods where his car was down almost under the trees off the road was to see a lot, and then when confronted with the proposition that these filling station people had told about it, he jumped at the conclusion right off before he was ever accused of having anything to do with the little girl and denied that he had done so. These statements as offered by the State and then the man on the witness stand telling them, certainly is enough corroborative evidence to make his conviction insofar as we can see clear beyond a reasonable doubt.

As far as we know all the courts generally hold that in a case of the kind, assault with intent to ravish, it may be shown by the prosecuting witness, or by other witnesses, that the prosecutrix made complaint of the offense

soon after its commission. The reason given for such, and a logical reason, is that such evidence indicates the truth of the charge and is corroborative of such charge.

Here we have the child alone making the statements to the jury, and it isn't the statement she made to the little girl or anyone else, and the fact that she made this statement to the little girl is not offered as corroborative evidence at all (it is not offered for that purpose) but as substantive evidence of her as a direct statement of what happened. Under such a situation, this, of course, makes it a question for the jury as to her credibility. There is a very close relationship between such statements made immediately after to someone else and that of the person when offered for corroborative purposes, and, of course, a long delay in making such statements is shown as casting doubt upon the truth of the accusation. Insofar as such statements are made under such circumstances of spontaneity as to preclude fabrication they are generally admissible, but here we do not have the statements made for this purpose.

■ Objection, obviously, was made to the prosecutrix relating these two other occurrences in Mississippi and in the home. These objections were overruled and properly so. "In most jurisdictions it is recognized that in prosecutions for statutory rape, or rape of a female under the age of consent or otherwise unable to consent, evidence is admissible which tends to show prior offenses of the same kind committed by the defendant with the prosecuting witness, such evidence being admitted in corroboration of the offense charged or to prove identity, and not to prove a separate offense." Wharton's Criminal Evidence, Vol. 1, Section 242, page 547. Under this quoted statement is

a note which cites cases from most State jurisdictions including that of *Vinson v. State,* 140 Tenn. 70, 203 S.W. 338. This is certainly the rule in Tennessee and there can be no objections to it.

■ A number of assignments of error were made herein which were not included in the motion for a new trial. The present counsel who have so ably briefed and presented this appeal in oral argument were not of counsel in the trial court. We, of course, cannot consider these assignments which were not incorporated in the motion for a new trial or were not in any manner brought to the attention of the trial judge because under Rule 14, paragraph (5), as reported in 185 Tenn., and under the case of *Hobbs v. State,* 121 Tenn. 413, 118 S.W. 262, when the assignments are not included in the motion for a new trial we should not consider them.

■ Regardless of this fact and in an abundance of precaution to see that this man has had a fair trial, we have looked at these assignments and very carefully read the record and find that the evidence with ample corroboration overwhelmingly supports the conviction. From what was just said it is perfectly obvious that we do not find that the evidence preponderates against the verdict of the jury, the plaintiff in error coming here with a presumption of guilt and the burden being on him to overcome that presumption in this Court.

One of these assignments that we cannot consider is the fact that the trial judge did not charge the jury as to the weight to be given this testimony when it was not disclosed until some six months after the event happened. There was no request below that such an instruction be given. The substantive law does not require that such a

charge be given unless requested, and where the facts clearly show that these things were considered by the jury, as is shown by reading the evidence of the plaintiff in error himself when he emphasized several times in answers to questions the delay of the child in ever telling this, all of which convinces us that there was no error in the failure to give such a charge.

We have carefully considered the entire matter and find for the reasons above stated and there is no reversible error in this record and the judgment must be affirmed.