NORBERT NELSON and CARL J. CRAIN, Plaintiffs in Error, v. STATE OF TENNESSEE et al., WILLIAM S. NEIL, Warden, Defendants in Error.
—470 S.W.2d 32.

April 1, 1971.

Certiorari Denied by Supreme Court July 19, 1971.

Hugh W. Stanton, Jr., Memphis, for plaintiffs in error.

David M. Pack, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Thomas F. Graves, Assistant District Attorney General, Memphis, for defendants in error.

OLIVER, J. Norbert Nelson and Carl J. Crain, the petitioners below, indigent and represented at their trials and in this proceeding by the Shelby County Public Defender upon appointment by the court, inmates of the State Penitentiary where they are serving two consecutive three to five-year grand larceny sentences adjudged in the Criminal Court of Shelby County, have duly perfected an appeal in the nature of a writ of error from the judgment of that court dismissing, without an evidentiary hearing, their petition filed under the Post-Conviction Procedure Act (TCA secs. 40-3801—et seq.).

Both of the petitioners' convictions for grand larceny, which were committed in separate Memphis grocery stores on the same day, were affirmed upon appeal to this Court and the Supreme Court of Tennessee denied certiorari in each case.

In their Assignments of Error the petitioners reiterate and rely upon the same alleged errors advanced in their present petition. Their first two Assignments charge that they were illegally arrested without a warrant and were not advised why they were arrested. This insistence is without merit. In the first place, even if

the petitioners' arrest was illegal, the law is settled in this State that there is no constitutional immunity from an unlawful arrest. Harris v. State, 206 Tenn. 276, 287, 332 S.W.2d 675. Arrest without a warrant does not per se violate any constitutional right entitling the defendant to post-conviction relief by habeas corpus where he is subsequently convicted upon a valid indictment. In re Johnson, D.C., 277 F.Supp. 267; McCord v. Henderson, 384 F.2d 135 (6th Cir. 1967). The proceedings by the Grand jury in finding an indictment or presentment against a person are not affected by the mode or manner of his arrest, or by the fact that he has not been arrested. Vowell v. State, 207 Tenn. 598, 341 S.W.2d 735. In 42 C.J.S. Indictments and Informations sec. 17, p. 856, these rules are stated:

"An indictment is not void because accused was not present in the county when he was indicted. In the absence of a statutory provision to the contrary, a grand jury has the power to indict or present for a crime whether accused has been arrested and is in custody or not, jurisdiction not being in any way dependent on his arrest or custody. * * * The validity of an indictment is not affected by the fact that accused was illegally arrested or that his custody is illegal."

By their next two Assignments the petitioners advance the contentions made in their petition that they were not advised concerning their constitutional rights to counsel, as mandated by Miranda v. Arizona. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, prior to their interrogation by officers of the Memphis Police Department during which they confessed. With reference to these conten-

tions, in affirming the petitioners' convictions in the Lucky Leadway store larceny case, Presiding Judge Walker wrote for the Court:

> "The defendants contend that they were not adequately advised of their constitutional rights before interrogation. No objection was made to this evidence when it was presented to the jury, and it was not called to the trial judge's attention in the motion for a new trial. This assignment is overruled."

█ And, as pointed out in the Court's opinion affirming their convictions in the Big Star grocery store larceny case, although the petitioners objected to admission of their custodial statements they raised no question about that matter in their motions for a new trial. The trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and assignments of error which were not incorporated in the motion for a new trial will not be considered on appeal. Wilkerson v. State, 208 Tenn. 666, 348 S.W.2d 314; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780.

Rule 14(5) of the Rules of the Supreme Court of Tennessee, adopted by this Court, provide in pertinent part:

> "Error in the admission or exclusion of testimony, in charging a jury, or refusing further instructions, misconduct of jurors, parties or counsel, or other action occuring [sic] or committed on the trial of the case, civil or criminal, or other grounds upon which a new trial is sought, will not constitute a ground for re-

versal, and a new trial, unless it affirmatively appears that the same was specifically stated in the motion made for a new trial in the lower court, and decided adversely to the plaintiff in error, but will be treated as waived, in all cases in which motions for a new trial are permitted.''

Just as one may not be permitted to put the trial court in error by by-passing that court with reference to allegedly prejudicial errors and then be heard to complain and urge the same matters for reversal in the appellate court, upon the same reasoning and considerations of public policy he may not be permitted to resurrect and insist upon the same alleged error by subsequent collateral attack upon his conviction in a post-conviction proceeding.

Equally untenable is the petitioners' current contention that their court-appointed trial counsel were incompetent and ineffective. In only general terms they charge their attorneys failed to object to ''illegal evidence'' and to raise ''reversal errors'' in their new trial motions, and did not defend them at their trial or upon appeal. Essentially the same question was raised by Nelson in a habeas corpus petition filed on January 1, 1969. After an evidentiary hearing the trial court found that counsel's representation of Nelson was ''vigorous and effective'' and dismissed the petition, upon appeal this Court affirmed the judgment of the trial court, in an opinion by Judge Russell filed January 29, 1970. Since, as noted, both petitioners were represented in both larceny cases by the Shelby County Public Defender's staff, and were jointly indicted and tried in both cases,

that finding of the trial court and this Court in Nelson's habeas corpus petition attacking his trial counsel necessarily applies to Crain also. Thus, the same question raised by both of them in the present case is foreclosed and may not be relitigated. T.C.A. secs. 40-3811, 40-3812.

■ Moreover, as heretofore indicated, appointed counsel in both cases prosecuted an appeal to this Court, and to the Supreme Court of this State by certiorari. The petitioners' present generalized disparaging denunciation of their court-appointed trial counsel does not charge those attorneys with breach of the standard of duty and proficiency applied by the courts in considering this question. An excellent exposition of the law applicable to charges of inadequate legal representation in criminal cases is stated in Schaber v. Maxwell, 348 F.2d 664 (6th Cir. 1965):

"In Scott v. United States, 334 F.2d 72, 73 (C.A.6), cert. denied, 379 U.S. 842, 84 S.Ct. 81, 13 L.Ed.2d 48, this court stated the general rule as follows:

'Only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking the conscience of the Court, can a charge of inadequate legal representation prevail. The fact that a different or better result may have been obtained by a different lawyer does not mean that the defendant has not had the effective assistance of counsel.' (Citing cases).

\* \* \* \* \* \*

"In MacKenna v. Ellis, 280 F.2d 592, 599 (C.A.5), cert. denied, 365 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78, the court stated:

'We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' "

And in Williams v. Beto, 354 F.2d 698 (5 Cir. 1966), it is said:

"This is a good time to make it plain, however, that when a defendant requests the appointment of counsel he is simply seeking the benefits of the attorney-client relationship as customarily practiced in the American system of jurisprudence, no more and no less. Lawyers are not required to be infallible. If they were, law practice would soon totally disappear. MacKenna v. Ellis, (5 Cir., 1960), 280 F.2d 592, mod. 289 F.2d 928, cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. Courts themselves are often thought to err, for which they are reversed by higher tribunals.

"The ability and faithfulness of an attorney is not to be judged by whether he won or lost the verdict, De-Roche v. United States, (9 Cir., 1964), 337 F.2d 606; Holt v. United States, (8 Cir., 1962), 303 F.2d 791, cert. den. 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132; Kilgore v. United States, (8 Cir., 1963), 323 F.2d 369, cert. den. 376 U.S. 922, 84 S.Ct. 681, 11 L.Ed.2d 617. Pineda v. Bailey, 5 Cir., 340 F.2d 162, supra. If losing the case

were proof of incompetency or infidelity, the professional career of the most vigorous attorneys would be of relatively short duration. A lawyer cannot be expected to win a hopeless case, although it may occasionally happen. Hopeless cases may always be won in the fictionalized fancy of the TV screen, but the hard facts of the real courtroom are very much to the contrary.

"When one seeks the assistance of counsel, he thereby confesses his own idadequacy in the field and stipulates his willingness, like any other client, save in the exceptional case we have already discussed, to be bound by the presumably superior knowledge of the professional man on whose assistance he proposes to depend.

"He agrees that this attorney will be in charge of his defense in the legal battle about to begin. He should know that in the course of a lawsuit there are many critical Rubicons at which the attorney must make finely balanced, often agonizing, decisions. A legal situation frequently presents choices in many directions. Unfortunately for him, lawyer has to decide, he realizes events may prove his decision not the best, but the merits of the decision are not altogether capable of ascertainment merely by consulting the outcome. Taylor v. United States, (8 Cir., 1960), 282 F.2d 16.

"If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it. Moreover, the fact that some other lawyer followed a different course in another case, or would have done differently had he been acting as counsel, is no ground for branding the appointed

attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight. Scott v. United States, (6 Cir., 1964), 334 F.2d 72, cert. den. 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed.2d 48.

"Court appointed counsel is no different to any other lawyer. He is still a lawyer, he is still practicing law, and he is no less confronted by difficult decisions of tactics and strategy. He cannot stand still and do nothing. That indeed might be the best evidence of incompetency, or infidelity, or ineffectiveness, or all three. He must decide as his knowledge, experience, and talents best permit, and then move ahead. When he does this, that is all any lawyer can do, and the client has no right to complain of the absence of a miracle. Hickock v. Crouse, (10 Cir., 1964), 334 F.2d 95, cert. den. 370 U.S. 982, 85 S.Ct. 689, 13 L.Ed.2d 572, and Smith v. Crouse, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572, reh. den. two cases, 380 U.S. 928, 85 S.Ct. 908, 13 L.Ed.2d 817.

"It is the duty of every court, state or federal, fearlessly to see that the attorney is faithful to his trust. Courts will not shirk this duty. On the other hand, we must have no qualms about rejecting the ill founded contentions of those who have enjoyed the services of court appointed counsel only to seek, without just cause, to discredit their benefactors."

See also: State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263; Morgan v. State, Tenn.Cr. App., 445 S.W.2d 477; State ex rel. Leighton v. Henderson, Tenn.Cr.App., 448 S.W.2d 82.

Manifestly, by this unassailable standard these petitioners have no legitimate complaint of the character of representation afforded them by their appointed trial counsel.

The judgment of the trial court is affirmed.

Mitchell, J., concurs.

Galbreath, J., (concurring in part and dissenting in part).

While in complete agreement with the action of the trial court in dismissing the oft presented contentions of the plaintiffs in error without an evidentiary hearing and with the result reached by the majority opinion here, I am unable to agree with the broad and general holding to the effect that petitioners in post conviction collateral attacks on judgments claimed to be void or voidable ''may not be permitted to resurrect and insist upon the same alleged error'' objected to on trial but which ''they raised no question about * * * in their motions for a new trial.'' This suggests that the trial judge may not grant a hearing even if he believes the petition sets out meritorious grounds for relief that were not raised in the trial court for reasons not the fault of the petitioner. Such a hard and fast rule would render in some degree impotent the office of post conviction procedure and habeas corpus attacks on invalid sentences of confinement

which they are designed to nullify, and would be even more harsh and unyielding than the test applied in direct appeals wherein, "It is well settled, however, under our practice, that when necessary to meet the ends of justice, this court has the right to notice, and will notice, errors of the lower court, and, when the error is very plain, will correct it of its own motion." See First National Bank of Elgin, Ill. v. Russell, 124 Tenn. 618, 139 S.W. 734; and Baldwin v. State, 213 Tenn. 49, 372 S.W.2d 188.

The office of post conviction legislation is not to restrict the court's jurisdiction to inquire into and relieve against unlawful imprisonment, but to broaden even the remedies available under habeas corpus prior to such enactments. As has been said of similar legislation enacted by Congress:

"[T]he effect * * * is to enlarge the privilege of the writ of *habeas (sic) corpus* and make the jurisdiction of the courts and judges of the United States coextensive with all the powers that can be conferred on them. It is a bill of the largest liberty.

$$* \quad * \quad * \quad * \quad * \quad *$$

"This legislation is of the most comprehensive character. It brings within the *habeas corpus* jurisdiction of every court and of every judge every possible case of privation of liberty contrary to the National Constitution, treaties, or laws. It is impossible to widen its jurisdiction." Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

While, as aforesaid, I agree that Judge Faquin was within his rights to deny the petitioners a hearing in this matter, I believe he would have been equally in his rights, if in his discretion he deemed it necessary, to have granted a full hearing. To the extent that the majority opinion suggests the contrary, I respectfully dissent.