FILED

06/07/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 7, 2017

### CALVIN ELLISON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Madison County**
**No. C-16-157    Roy Morgan, Judge**

_____

### No. W2016-01784-CCA-R3-PC

_____

The petitioner, Calvin Ellison, appeals from the denial of his petition for post-conviction relief, which petition challenged his 2013 convictions of misdemeanor reckless endangerment, aggravated assault, and employing a firearm during the commission of a felony. Because the petitioner failed to establish that he was prejudiced by counsel's failure to challenge the consecutive alignment of his sentences and because he failed to establish that counsel performed deficiently in any other regard, we affirm the denial of post-conviction relief.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Calvin Ellison.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jerry Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Madison County Grand Jury charged the petitioner with one count of attempted first degree murder, two counts of aggravated assault, and one count of employing a firearm during the commission of or attempt to commit a dangerous felony. The evidence adduced at the petitioner's trial established that the petitioner and victim Joshua Cathey exchanged words at a Jackson convenience store about the petitioner's interactions with Mr. Cathey's wife, Princess Cathey. *See State v. Calvin Ellison*, No. W2013-02786-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, Dec. 10, 2014), *perm. app. denied* (June 17, 2015). Mr. and Ms. Cathey testified that the petitioner

followed Mr. Cathey to his car and then fired several shots at the car as Mr. Cathey drove away with Ms. Cathey in the passenger's seat. *See id.*, slip op. at 2-3. The petitioner and his friend, Lewis Grimes, III, testified that the petitioner fired on the Catheys only after Mr. Cathey drove his vehicle toward the petitioner at a high rate of speed. *See id.*, slip op. at 6-7. The petitioner provided two pretrial statements to the police, denying both times that he had fired a weapon at the Catheys. *See id.*, slip op. at 4-5, 7. The jury convicted the petitioner of reckless endangerment, aggravated assault, and employing a firearm during the commission of or attempt to commit first degree murder. *See id.*, slip op. at 7. The jury acquitted the petitioner of the second charge of aggravated assault. *See id.*

Following his unsuccessful bid for relief on direct appeal, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he was denied the effective assistance of counsel. The petitioner also filed a motion to set aside the fines and costs associated with his convictions. In an amended petition, the petitioner averred that counsel performed deficiently by failing to raise the imposition of consecutive sentencing as an issue on appeal; failing to challenge the duplicitous indictment; failing to object to the jury instructions, certain testimony, and violations of the petitioner's protection against double jeopardy; and failing to adequately inform the petitioner of the charges against him.

At the August 22, 2016 evidentiary hearing, the petitioner testified that he presented counsel with "12 different issues to" be included on direct appeal and that counsel "only chose like two or three of them." The petitioner said that he wanted counsel to raise the issue of prosecutorial misconduct on direct appeal. By way of explanation, the petitioner claimed that he was originally charged by indictment with only a single count of aggravated assault related to the incident with the Catheys. He said that the assistant district attorney originally assigned to his case "threw out that indictment and reindicted" him on the more serious charges only after he "caught a charge against a . . . jail sheriff deputy" who was "related to" that particular assistant district attorney. He claimed that the seriousness of the new charges reflected the assistant district attorney's desire to punish the petitioner for "the charge against his cousin" and for the petitioner's refusal to "accept 11/29 over in . . . [g]eneral [s]essions" court. The petitioner insisted that someone in the district attorney's office "sent a letter" to trial counsel admitting that the indictment on more serious charges was an act of retaliation by that office as a favor to one of the assistant district attorneys general.

The petitioner testified that counsel also performed deficiently by failing to adequately address on appeal the consecutive alignment of the sentence for his conviction of employing a firearm during a dangerous felony, arguing that counsel "didn't argue" the issue "the way he supposed to had argued" because counsel "didn't know at the time"

how to argue the issue. He claimed that he had "investigated the charge" and that the consecutive alignment of his sentences was illegal because "all these charges is on the same person." He insisted that his "6 and 10 should be run together." The petitioner also claimed that he should have been sentenced as a Range I offender because the State failed to file a notice seeking enhanced punishment and that he was improperly denied pretrial jail credits.

The petitioner stated that counsel performed deficiently by failing to object to instances of prosecutorial misconduct. He then embarked on a meandering narrative response the gist of which was that he believed a particular assistant district attorney, whose relative the petitioner had apparently assaulted, exerted his influence in an improper manner in the petitioner's case, insisting that there was "something fishy there." He also claimed that the assistant district attorney general who prosecuted the case engaged in misconduct during his cross-examination of the petitioner and during the closing argument.

The petitioner also claimed that counsel performed deficiently by failing to file a motion to suppress "an illegal arrest," testifying that "the crime scene, it was tampered with" and that the police "didn't get all the evidence properly how they [are supposed] to got [sic] it, and then they made mistakes." He insisted that the police had not reviewed the video surveillance from the convenience store "properly because the tech said there wasn't no [sic] video for the outside." He contended that had the police properly viewed the video surveillance, he "wouldn't never have been charged because it showed that the victim tried to run [him] over and [he] was lawfully defending" himself. He also claimed that the police had failed to take photographs and collect relevant evidence and that "as a personal vendetta" against the petitioner, the police "did a messy crime scene" and "didn't handle the evidence proper."

The petitioner testified that he asked counsel to raise the issue of duplicity in the indictment, arguing that the count charging him with employing a firearm during the commission of a dangerous felony actually charged "two different crimes in one count of a[n] indictment." He claimed that the charge violated double jeopardy principles because he was punished twice for a single act during the same criminal episode against the same victim.

With regard to his motion to set aside fines and costs, the petitioner testified that the State withdrew an amount each month from his inmate trust account toward the payment of his fines and costs and that the remainder was insufficient for him to live on in prison each month.

During cross-examination, the petitioner acknowledged that the jury viewed the video surveillance of the incident in its entirety and that they had the benefit of the petitioner's testimony that he shot at Mr. Cathey in self-defense. The petitioner also conceded that the police took photographs of the Cathey's vehicle and that the photographs were admitted into evidence and viewed by the jury. The petitioner admitted that he was acquitted of the aggravated assault of Ms. Cathey, but he insisted that his trial counsel deserved no credit for the acquittal, chalking that result up to his own "work and effort of . . . reading through [his] motion." The petitioner identified a copy of the State's notice seeking enhanced punishment and agreed that it was filed far in advance of his trial, but he argued that it was "not the proper form."

Counsel, an assistant district public defender, testified that he represented the petitioner at trial and on appeal. Counsel testified that the petitioner sent him a letter suggesting grounds to be raised on direct appeal, and he explained to the petitioner that those grounds could not be raised on appeal because they had not been raised in the motion for new trial and that he had no "basis to pursue those particular grounds." Counsel said that, in regards to the petitioner's claim of prosecutorial misconduct, the district attorney's office assigned a different assistant district attorney general to prosecute the petitioner's case after counsel asked that the original assistant district attorney general be removed from the case. "Based on that," counsel "didn't think there were any grounds to pursue an appeal on that." Counsel said that he did not challenge the consecutive alignment of the petitioner's sentences because it was his opinion that consecutive alignment of the firearms conviction "was mandated by law."

Counsel said that the petitioner had asked him to file a motion to suppress his pretrial statement as well as a motion to have the prosecutor removed. Counsel filed both motions, and the court held hearings on them.

During cross-examination, counsel testified that the district attorney's office had an "open file" discovery policy that permitted counsel to "make copies of whatever is in" the case file. He said that he availed himself of the opportunity to copy all of the discovery materials and that he had reviewed the materials with the petitioner. In particular, counsel said that he reviewed the recording of video surveillance from the convenience store with the petitioner. He did not provide the petitioner with a copy of the recording because the petitioner, who was incarcerated at the time, had no method to play the video recording.

Counsel testified that the State filed a timely notice seeking enhanced punishment and that the petitioner was properly sentenced as a Range II offender. He said that the petitioner received the minimum sentence for both of his convictions. Counsel agreed that consecutive sentences were required by law in the petitioner's case.

-4-

The post-conviction court denied relief, accrediting counsel's testimony and concluding that the petitioner had failed to establish by clear and convincing evidence any facts supporting his claims of ineffective assistance. The court also found that the petitioner had failed to prove his claim of prosecutorial misconduct. With regard to the petitioner's claimed double jeopardy violation, the post-conviction court found that this court had considered and rejected this claim on direct appeal. The court found that the petitioner had failed to prove any fact to support his claims of evidence tampering. The post-conviction court deemed the alignment of the petitioner's sentences "proper," explaining, "It was mandated consecutive and that is the law. . . . [I]t was mandated that those sentences that ran consecutive be consecutive according to statutory requirements in the State of Tennessee." The post-conviction court specifically did not rule on the petitioner's claim for pretrial jail credits. The court granted the petitioner's request to waive the fines in his case but refused to waive the court costs and litigation taxes.

In this appeal, the petitioner contends that the post-conviction court should have granted relief because he was deprived of the effective assistance of counsel at trial and on appeal, essentially reiterating each of the claims of deficient performance raised in his original petition. The State asserts that the trial court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner first asserts that counsel performed deficiently by failing "to establish a record for appellate review." The petitioner's actual complaint appears to be, however, that counsel did not raise all of the issues that the petitioner wanted him to raise on direct appeal. In any event, the record was adequate for our review of those issues that counsel did raise on appeal.

The petitioner contends that trial counsel should have raised a claim of prosecutorial misconduct on appeal. The petitioner failed to present a single item of evidence at the post-conviction hearing to support his claim that the charges in this case were filed as a personal vendetta against him by a rogue assistant district attorney general who continued to exert a nefarious influence over the proceedings even after the trial court granted counsel's motion to remove that particular assistant district attorney general. In consequence, there is no merit to his contention that this claim should have been raised on direct appeal.

-6-

The petitioner also claims counsel should have challenged his conviction of employing a firearm during the commission of a dangerous felony on grounds that the conviction violated double jeopardy principles because he was convicted for aggravated assault based upon the exact same conduct. Where, as is the case here, a petitioner has been convicted of violating two different statutes, the claim is one of multiple description. In *State v. Watkins*, our supreme court adopted the *Blockburger* test for multiple description claims. *State v. Watkins*, 362 S.W.3d 530, 556 (Tenn. 2012). "The first step of the *Blockburger* test is the threshold question of whether the convictions arise from the same act or transaction." *Id.*

> If the threshold is surpassed, meaning the convictions arise from the same act or transaction, the second step of the *Blockburger* test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

*Id.* at 557. Although the petitioner's convictions of aggravated assault and employing a firearm during the commission of a dangerous felony arose from the same transaction, those convictions do not violate principles of double jeopardy because each conviction requires proof of a fact that the other does not. A conviction of aggravated assault required proof that the petitioner caused Mr. Cathey "to reasonably fear imminent bodily injury," T.C.A. § 39-13-101(a)(2), and a conviction of employing a firearm during the commission of attempted first degree murder does not contain such a requirement, *see* T.C.A. § 39-17-1324. A conviction of employing a firearm during the commission of attempted first degree murder required proof that the petitioner employed a firearm during an attempt to commit a premeditated and intentional murder. *See Calvin Ellison*, slip op. at 13-14 (discussing necessary elements for petitioner's conviction). A conviction of aggravated assault contains no such requirements. Because the petitioner's convictions do not offend principles of double jeopardy, counsel did not perform deficiently by failing to challenge the convictions on double jeopardy grounds.

The petitioner presented no evidence to suggest that trial counsel performed deficiently by failing to "file a motion to suppress an illegal arrest." "[T]he law is settled

in this State that there is no constitutional immunity from an unlawful arrest." *Nelson v. State*, 470 S.W.2d 32, 33 (Tenn. Crim. App. 1971); *see Manier v. Henderson*, 442 S.W.2d 281, 282 (Tenn. Crim. App. 1969) ("There is no constitutional immunity from an unlawful arrest."); *State v. Lindsay Ochab*, No. M2015-02290-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Nashville, Oct. 26, 2016) ("The phrase 'suppress the arrest' is a syntactical anomaly . . . ."). "[T]he appropriate remedy in the criminal justice arena for an illegal arrest is suppression of any evidence obtained as a direct or indirect result of the arrest." *State v. Baker*, 966 S.W.2d 429, 432 (Tenn. Crim. App. 1997). The petitioner does not suggest what, if any, evidence was gathered as a result of his arrest. Instead, he reiterates claims that the crime scene evidence was tampered with, that the police failed to preserve video footage, and that the police failed to properly photograph the scene. None of these claims find support in the record. In consequence, the record does not indicate that trial counsel performed deficiently in this regard.

The petitioner also claims that his counsel should have challenged the consecutive alignment of the sentences imposed for his convictions of aggravated assault and employing a firearm during the commission of a dangerous felony. The record suggests that counsel, the prosecutor, and the trial court believed that consecutive alignment of the petitioner's convictions of aggravated assault and employing a firearm during the commission of a dangerous felony was mandated under the terms of Code section 39-17-1324. That statute provides, in relevant part:

> (c) A person may not be charged with a violation of subsection (a) or (b) if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged. In cases where possession or employing a firearm are elements of the charged offense, the state may elect to prosecute under a lesser offense wherein possession or employing a firearm is not an element of the offense.
>
> . . . .
>
> (e)(1) A sentence imposed for a violation of subsection (a) or (b) shall be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony.

T.C.A. § 39-17-1324(c), (e)(1). The petitioner was specifically charged with and convicted of employing a firearm during the commission of the attempted first degree murder of Mr. Cathey. The petitioner was not convicted of the attempted first degree murder of Mr. Cathey but was instead convicted of misdemeanor reckless endangerment.

-8-

Aggravated assault, as charged in this case, could not have served as the predicate felony for the petitioner's conviction under Code section 39-17-1324 because use of a firearm was an element of the offense. Under these circumstances, Code section 39-17-1324 did not mandate consecutive alignment of the petitioner's sentences. Thus, counsel and the court were mistaken if it was their belief that consecutive sentencing was mandatory.

That being said, even assuming that counsel's failure to challenge the sentence alignment was based upon his misapprehension of the applicable law and that this failure amounted to deficient performance, the petitioner has failed to establish by clear and convincing evidence that he was prejudiced by counsel's deficient performance. The petitioner did not exhibit to the evidentiary hearing a transcript of his sentencing hearing. Without examining the transcript, we cannot say with certainty that the trial court would not have elected to impose consecutive sentencing based upon one of the permissive grounds contained in Code section 40-35-115. This is particularly true given that the enhanced punishment notice appended to the evidentiary hearing establishes that the petitioner had an extensive criminal history that spanned the entirety of his adult life and included prior convictions of aggravated assault and weapons possession. In consequence, the petitioner has failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Accordingly, we affirm the criminal court's order denying relief.

_____
JAMES CURWOOD WITT, JR., JUDGE