IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2017

**LATISHA JONES v. TRINITY MINTER, WARDEN**

**Appeal from the Criminal Court for Shelby County**
**No. 04-02523     Glenn Ivy Wright, Judge**

_____

**No. W2016-01697-CCA-R3-HC**
_____

The Petitioner, Latisha Jones, appeals the Shelby County Criminal Court's denial of her petition for a writ of habeas corpus, wherein she sought relief from her convictions for first degree felony murder and especially aggravated robbery. In this appeal as of right, the Petitioner alleges that her convictions are void because she was illegally extradited from Mississippi to Tennessee, depriving the trial court of lawful jurisdiction. Discerning no error, we affirm the judgment of the habeas corpus court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Monica A. Timmerman, Memphis, Tennessee, for the appellant, Latisha Jones.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Amy P. Weirich, District Attorney General; and Austin B. Scofield, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On June 28, 2003, the Petitioner and three other individuals—James Thacker, Delshaun Epps, and Kymetra Gates—were involved in robbing the victim, Gregory Smith, at his Memphis home. The Petitioner, as the one who knew the victim, arranged a meeting on the night of the offense. See State v. Latisha Jones, No. W2005-02673-CCA-R3-CD, 2007 WL 241023, at *4 (Tenn. Crim. App. Jan. 25, 2007), perm. app. denied (Tenn. June 25, 2007). As co-defendants Thacker and Epps struggled with the victim, the Petitioner struck the victim over the head with a beer bottle. Id. She then retrieved a

hammer from the floor and struck the victim over both kneecaps. Id. The Petitioner observed both co-defendants Gates and Epps remove certain of the victim's possessions from the house. Id. The Petitioner took some beers and left the victim's house with the others. Id. Additionally, the Petitioner had previously told a neighbor that evening that the group intended to rob the victim. Id. at *1.

In August 2003, the Memphis Police Department ("MPD") located the Petitioner in Greenville, Mississippi, so they requested the Greenville Police Department's ("GPD") assistance with arresting the Petitioner. After her arrest, the Petitioner signed a Waiver of Extradition form on September 8, 2003, which noted the charge as "first degree murder in the perpetration of a felony to wit: aggravated robbery 39-13-202." She was extradited to Tennessee.

A Shelby County grand jury indicted the Petitioner on March 23, 2004, for first degree felony murder during the perpetration of a robbery and especially aggravated robbery. See Tenn. Code Ann. §§ 39-11-403, -13-202. In the same indictment, co-defendant Gates was charged with facilitation of a felony, to wit: robbery. See Tenn. Code Ann. § 39-11-403. Later, a superseding indictment was filed; the only apparent change being to add an alias of one of the co-defendants.[1]

A Shelby County jury convicted the Petitioner in November 2005 as charged. The Petitioner was sentenced to concurrent terms of life imprisonment for her felony murder conviction and twenty-three years for her especially aggravated robbery conviction. See State v. Latisha Jones, No. W2005-02673-CCA-R3-CD, 2007 WL 241023, at *1 (Tenn. Crim. App. Jan. 25, 2007), perm. app. denied (Tenn. June 25, 2007). On direct appeal, this court affirmed the Petitioner's judgments. See Jones, 2007 WL 241023, at *1. Additionally, the Petitioner's subsequent pursuit of post-conviction relief was unsuccessful. See Latisha Jones v. State, No. W2009-02057-CCA-R3-PC, 2010 WL 5276886, at *1-3 (Tenn. Crim. App. Dec. 17, 2010), perm. app. denied (Tenn. Apr. 13, 2011).

On May 28, 2015, the Petitioner, pro se, filed the instant petition seeking a writ of habeas corpus. After counsel was appointed, an amended petition was filed. In the amended petition, the Petitioner argued that the trial court was without jurisdiction to convict or sentence her because she was transported to Tennessee in violation of the Criminal Extradition Act and because she unknowingly and involuntarily signed a waiver of extradition without the advice of counsel. The Petitioner acknowledged that challenges to the extradition process normally must be raised prior to trial to avoid waiver

---

[1] A superseding indictment replaces the first; the Petitioner was not indicted twice, contrary to her assertions.

of personal jurisdiction but prayed for relief because her presence was acquired by "government conduct of a most shocking and outrageous character" in violation of her right to due process of law. The Petitioner pointed to the following facts as supporting her request for relief: The paperwork sent to the GPD by the MPD consisted of a memo requesting the GPD's help in apprehending the Petitioner, an unsigned affidavit of complaint and warrant for the Petitioner's arrest, and a booking photograph of the Petitioner with her relevant statistical information. The Petitioner further noted that she was tried on charges not included in the extradition agreement.

Additionally, the Petitioner requested post-conviction relief because she had new witnesses "that would have contradicted the testimony of one of the State's key witnesses against her." Finally, she submitted that post-conviction counsel "failed to call a witness on her behalf that was present in the courtroom and necessary to her claim."

A hearing on the petition was held. The Petitioner testified that, when the GPD officers arrested her, they told her that "they didn't really know what Memphis'[s] charges were." However, the Petitioner was taken before a judge later that day. According to the Petitioner, the judge informed her that she "had a right to stay there or go back with the [MPD]," but "[h]e didn't really say anything about a[n extradition] hearing." The judge did tell her that the MPD planned to charge her with aggravated robbery and felony murder.

The Petitioner acknowledged that she signed a Waiver of Extradition form after speaking with the judge. The Petitioner relayed that the she did not have the assistance of a lawyer when she signed the form. According to the Petitioner, she signed the form "to get it over with . . . and see what [the MPD] wanted with [her]." The form provided the following:

> [I] [u]nderstand that under the law, I am not required to waive extradition. I have a right to contest extradition. If I decide to contest extradition I would be entitled to a hearing before the [G]overnor of the State of Mississippi. After holding this hearing and . . . hearing the evidence presented, the [G]overnor [would] decide whether or not to extradite me. Knowing this I will desire to waive extradition and to voluntarily return to Memphis, Tennessee.

The Petitioner confirmed that she could read.

The Petitioner clarified that, while she did sign this document, she only agreed to return to face "those charges in the extradition." According to the Petitioner, when she returned to Memphis, the charges were changed to especially aggravated robbery, felony

murder, and facilitation of a felony.[2]  Furthermore, the Petitioner testified that she was found guilty pursuant to a theory of criminal responsibility at trial, "which wasn't even in the indictment."

The Petitioner stated that she did not know her extradition was illegal until 2014. When asked why it was illegal, the Petitioner replied,

> What I know now is that once a person . . . agrees to be extradited on charges, it's an agreement between the asylum and the demanding state. And once I agree to come to that state on those set of charges, that the United States Supreme Court said once I get to the asylum state that they must maintain those same charges and they cannot up the charges even though they may be similar.  And that's what they did.

The Petitioner also introduced into evidence the paperwork sent to the GPD—the memo from the MPD requesting the GPD's help in apprehending the Petitioner, the unsigned affidavit of complaint and warrant for the Petitioner's arrest, and a booking photograph of the Petitioner with her relevant statistical information.  According to the Petitioner, after "researching some things," she asked her mother to go the GPD and ask if they would "release anything that Memphis had given them concerning [the Petitioner]," and these were the documents the GPD provided to her mother.  The Petitioner averred, "The issue that I know now is it's a violation of Criminal Court Rule 3 that they cannot submit a document that is not authorized by a judge as their Affidavit of Complaint to arrest me."

The habeas corpus court denied the Petitioner relief, concluding that the Petitioner "signed a valid waiver of extradition" and that she did "not state a colorable claim" for relief.  Furthermore, the court held that the Petitioner had not presented any grounds to re-open her previous post-conviction petition.[3]  This appeal followed.

## ANALYSIS

Initially, we note that this is the Petitioner's second petition seeking habeas corpus relief.  We ascertain the facts of the Petitioner's first petition from the habeas corpus court's order summarily dismissing that petition.  According to the order, the Petitioner made the following allegations in her first petition: (1) the warrant that led to her arrest was "erroneous"; (2) the indictments against her failed as charging instruments; (3) the

---

[2] Contrary to this statement, nothing in the record indicates that the Petitioner was tried on a charge of facilitation of a felony.  The indictment lists only Kymetra Gates as a defendant for this charge.

[3] The Petitioner has abandoned any post-conviction relief argument on appeal, thus waiving appellate review of the habeas corpus court's ruling in that regard.

evidence was insufficient to support her convictions; (4) prosecutorial and judicial misconduct; and (5) ineffective assistance of counsel. The habeas corpus court summarily dismissed the first petition because the Petitioner failed to comply with the procedural requirements for seeking habeas corpus relief and because the Petitioner failed to state a colorable claim upon which relief could be granted.

The first petition is listed as an exhibit to the second petition, but it is not included in the record on appeal. Tennessee Code Annotated section 29-21-107(b)(4) provides that "[t]he petition shall state[ ] . . . [t]hat it is first application for the writ, or, if a previous application has been made, a copy of the petition and proceedings thereon shall be produced, or satisfactory reasons be given for the failure so to do." The procedural requirements for habeas corpus relief are "mandatory and must be followed scrupulously." Archer v. State, 851 S.W.2d 157, 165 (Tenn. 1993). However, dismissal is not required. Hickman v. State, 153 S.W.3d 16, 21 (Tenn. 2004). It is unclear if the habeas corpus court had the first petition before it when it rendered its ruling on the second petition or if any of the Petitioner's previous allegations are the same as that presented in the second petition. Because the habeas corpus court did not dismiss the second petition for procedural reasons, instead addressing it on the merits, we will do the same.

On appeal, the Petitioner alleges that the habeas corpus court erred by denying her request for habeas corpus relief. She submits that she was illegally transported from Mississippi to Tennessee upon "an unsigned and unattested affidavit of complaint." Additionally, the Petitioner, citing United States v. Rauscher, 119 U.S. 407 (1886),[4] claims that she could only be tried in Tennessee on the "charges" in the extradition agreement—"first degree murder in the perpetration of a felony to wit: aggravated robbery 39-13-202." When her "charges were amended to first degree murder in the perpetration of a felony, to wit: especially aggravated robbery, especially aggravated robbery, and facilitation of a felony," a violation of her due process rights resulted, entitling her to habeas corpus relief.

Under Tennessee law, the "grounds upon which habeas corpus relief may be granted are very narrow." Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). The writ will issue only where the petitioner has established: (1) a lack of jurisdiction for the order of confinement on the face of the judgment or in the record on which the judgment was rendered; or (2) that he is otherwise entitled to immediate release because of the

---

[4] In Rauscher, the Supreme Court held that one brought within a jurisdiction "by virtue of proceedings under an extradition treaty, can only be tried for one of the offences described in that treaty, and for the particular offence with which he is charged in the proceedings for his extradition . . . ." 119 U.S. at 430. Any additional charges must await release and a reinstitution of the extradition process. Id. This has been referred to as the doctrine of speciality.

expiration of his sentence. See State v. Ritchie, 20 S.W.3d 624, 630 (Tenn. 2000); Archer, 851 S.W.2d at 164.

The purpose of the habeas corpus petition is to contest a void, not merely a voidable, judgment. State ex rel. Newsom v. Henderson, 424 S.W.2d 186, 189 (Tenn. 1968). A void, as opposed to a voidable, judgment is "one that is facially invalid because the court did not have the statutory authority to render such judgment." See Summers v. State, 212 S.W.3d 251, 256 (Tenn. 2007). In contrast, "[a] voidable conviction or sentence is one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." Taylor, 995 S.W.2d at 83.

A petitioner bears the burden of establishing a void judgment or illegal confinement by a preponderance of the evidence. See Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000). We note that the determination of whether to grant habeas corpus relief is a matter of law; therefore, we will review the habeas corpus court's finding de novo without a presumption of correctness. McLaney v. Bell, 59 S.W.3d 90, 92 (Tenn. 2001).

First, our review of the record, reveals that the Petitioner was charged with first degree felony murder during the perpetration of a robbery, not especially aggravated robbery as she claims, and that the Petitioner was not charged with facilitation of a felony, that charge only applying to co-defendant Gates. Regardless, the Petitioner is not entitled to relief.

This court has held that an "[a]rrest without a warrant does not per se violate any constitutional right entitling the defendant to post-conviction relief by habeas corpus where he is subsequently convicted upon a valid indictment." Nelson v. State, 470 S.W.2d 32, 33 (Tenn. Crim. App. 1971). Accordingly, the Petitioner's claim of a defective affidavit of complaint or warrant, if true, would render her convictions voidable, not void. See, e.g., James Thomas v. Randy Lee, Warden, No. E2015-02427-CCA-R3-HC, 2016 WL 3996488, at *2 (Tenn. Crim. App. July 21, 2016) (holding that petitioner's claim that the affidavit of complaint underlying his arrest warrant, which was not signed by a neutral and detached magistrate or judge, was void ab initio and invalidated all subsequent proceedings would not result in habeas corpus relief); Jason Martindill v. Dwight Barbee, Warden, No. E2012-02624-CCA-R3-HC, 2013 WL 6050748, at *3 (Tenn. Crim. App. Nov. 13, 2013) (concluding that petitioner's claim that his arrest was warrantless, illegal, or unconstitutional was not cognizable in a habeas corpus proceeding); Edward Johnson v. Mark Luttrell, Sheriff and State, No. W2006-01409-CCA-R3-HC, 2007 WL 700951, at *1 (Tenn. Crim. App. Mar. 6, 2007) (holding that the petitioner's attacks on the initial warrant leading to his arrest and subsequent probable cause determination would not result in the grant of habeas corpus relief).

-6-

Moreover, the Petitioner acknowledges that this court, in <u>Sneed v. State</u>, 872 S.W.2d 930 (Tenn. Crim. App. 1993), has analyzed the various cases dealing with the extradition process, including <u>Rauscher</u>, and that she would not be entitled to relief under the holding of <u>Sneed</u>. The Petitioner urges this court to reconsider the <u>Sneed</u> holding and reach a different conclusion. We are not inclined to do so.

After an extensive examination of case law regarding extradition procedures, this court stated the following in <u>Sneed</u>:

> In our view, <u>Swaw [v. State</u>, 457 S.W.2d 875 (1970)] stands for the proposition that after a fair trial and conviction, there is simply no remedy available irrespective of the nature of the governmental action bringing the defendant into this jurisdiction. . . . The failure to assert any due process violation before trial would serve as a waiver of personal jurisdiction. If, however, the procedure is challenged in advance of trial and an evidentiary hearing establishes that the conduct of governmental authorities, as opposed to that of any private individual, is so illegal and outrageous as to shock the conscience of the court, the law of the land clause provides a measure of relief. <u>See</u> Tenn. Const. art. I, § 8. The accused must be returned to the asylum state pending the initiation of the extradition procedure.

872 S.W.2d at 937. Moreover, following a trial or guilty plea, "[p]rior defects in the extradition process, no matter how egregious, provide[] no basis for relief." <u>Id.</u> (citing <u>Swaw</u>, 457 S.W.2d at 875). Here, the Petitioner did not raise her challenge to the extradition process prior to trial, and she was instead found guilty by a jury. Consequently, she waived personal jurisdiction and is not entitled to habeas corpus relief. <u>See, e.g.</u>, <u>Martindill</u>, 2013 WL 6050748, at *3 (concluding same).

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the habeas corpus court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE